**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBERT KEMPSKI, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 06-252 *** |
| | ) | |
| v. | ) | |
| | ) | |
| TOLL BROS., INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| TOLL BROS., INC. | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE HEATING AND AIR | ) | |
| CONDITIONING SERVICES, INC., and | ) | |
| JD FRAMING CONTRACTORS, INC. | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## DELAWARE HEATING AND AIR CONDITIONING SERVICES
## MOTION FOR SUMMARY JUDGMENT

Delaware Heating and Air Conditioning Services Inc. (DHAC) hereby move for an Order granting DHAC's Motion for Summary Judgment.

The grounds for this motion are set forth in DHAC's Memorandum of Law in support of its Motion for Summary Judgment submitted herewith.

REGER RIZZO KAVULICH & DARNALL LLP
*/s/ Louis J. Rizzo, Jr., Esquire*
Louis J. Rizzo, Jr., Esquire
Delaware State Bar I.D. No. 3374
1001 Jefferson Plaza, Suite 202
Wilmington, DE 19801
(302) 652-3611
Facsimile: (302) 652-3620
Email: lrizzo@regerlaw.com
Attorney for Third Party Defendant
Delaware Heating and Air Conditioning Services, Inc.

Dated: March 20, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBERT KEMPSKI, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 06-252 *** |
| | ) | |
| v. | ) | |
| | ) | |
| TOLL BROS., INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| TOLL BROS., INC. | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE HEATING AND AIR | ) | |
| CONDITIONING SERVICES, INC., and | ) | |
| JD FRAMING CONTRACTORS, INC. | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## <u>PROPOSED ORDER</u>

Upon consideration of Delaware Heating and Air Conditioning Services ("DHAC")

Motion for Summary Judgment pursuant to Rules 50 of the Federal Rules of Civil Procedure, it

is hereby ORDERED that DHAC's Motion for Summary Judgment is GRANTED on

this ___ day of _____, 2008.


_____
_____J.
_____

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ROBERT KEMPSKI,                          )
                                         )
            Plaintiff,                   )        C.A. No.: 06-252 ***
                                         )
v.                                       )
                                         )
TOLL BROS., INC.                         )
                                         )
            Defendant.                   )
_____)
                                         )
TOLL BROS., INC.                         )
                                         )
            Third-Party Plaintiff,       )
                                         )
v.                                       )
                                         )
DELAWARE HEATING AND AIR                 )
CONDITIONING SERVICES, INC., and         )
JD FRAMING CONTRACTORS, INC.             )
                                         )
            Third-Party Defendants.      )

## MEMORANDUM IN SUPPORT OF THIRD-PARTY DEFENDANT, DELAWARE HEATING AND AIR CONDITIONING SERVICES, INC., MOTION FOR SUMMARY JUDGMENT

Third-Party Defendant, Delaware Heating and Air Conditioning Services, Inc. (hereinafter "DHAC"), by and through its undersigned counsel, hereby submit this Memorandum in Support of its Motion for Summary Judgment.

### FACTS

Defendant/Third Party Plaintiff Toll Bros., Inc (hereinafter "Toll Brothers")is a home builder.  In approximately 2004, Toll Brothers began the constructing a single home community on Naamans Road in New Castle County Delaware called Brandywine Hunt.  Toll Brothers contracted with DHAC for the performance of HVAC work in the homes within Brandywine Hunt.  The Toll Brothers/DHAC subcontract agreement contained the following Indemnification

clause:

> INDEMNIFICATION: The Contractor [DHAC] shall indemnify, defend and hold harmless [TBI] and all of its agents and employees from and against all claims, damages, losses and expenses including attorneys' fees in any way arising out of or resulting from the performance, existence or condition of the Work under the Contract Documents, whether or not such claim, damage, loss or expense is based in whole or in part upon any negligent act or omission of [TBI] or [TBI]'s participation in the Work or upon any statutory duty or obligation. [DHAC] expressly acknowledges that the parties are contractually allocating these risks to [DHAC] and [DHAC] has procured and shall maintain for the term of this Agreement the insurance policies...for the purpose of providing a financial means to support this indemnification provision. In addition, in any and all claims against [TBI] or any of its agents or employees by any employee of [DHAC] or anyone for whose acts [DHAC] may be liable, the indemnification obligation under this paragraph shall not be limited in any way by any limitations on the amount or type of damages, compensation or benefits payable by or for [DHAC] under workers' compensation acts, disability benefit acts or other employee benefit acts. ...[DHAC], at its own cost and expense, shall indemnify and defend [TBI] against such action, suit or proceeding and take such steps as are necessary to prevent the entry of judgment or award against [TBI] and to satisfy such judgment or award if entered.

*See* DHAC/Toll Brothers subcontract at paragraph 56; hereto attached as Exhibit "A". paragraph 56. Essentially, the contract requires DHAC to indemnify TBI for all acts of negligence, including those committed by TBI because of this language, "[T]he Contractor [DHAC] shall indemnify, defend and hold harmless [TBI]...whether or not such claim, damage, loss or expense is based in whole or in part upon any negligent act or omission of [TBI] or [TBI]'s participation in the Work or upon any statutory duty or obligation." *Id.*

The subcontract agreement between DHAC and Toll Brothers required that DHAC purchase an insurance policy that included Toll Brothers as an additional insured. *See* Exhibit "A" at Article 4. The insurance policy to be purchased by DHAC under the subcontract was to have a $1,000,000.00 per occurrence limit. *Id.* As a result of Article 4 of the Subcontract agreement, DHAC purchased an insurance policy with Penn National Insurance Company that

complied with the subcontract.

On August 25, 2005, Plaintiff Robert P. Kempski was working as a heating and air conditioning installer for DHAC within a stick structure of a new home located at Lot 87 of the Brandywine Hunt home construction site where DHAC was performing heating and air conditioning installation work. At all times relevant Plaintiff was working as an employee of DHAC. Plaintiff was installing duct work in the attic of the home when he claims that suddenly and without warning, the floor boards on which he was standing gave way, causing him to fall from the attic to the first floor of the home. A true and correct copy of Plaintiff's Complaint is attached hereto and incorporated herein as Exhibit "B".

Plaintiff filed a Complaint seeking compensation for injuries allegedly sustained when he fell through a floor board during the course and scope of his employment with Third-Party Defendant, DHAC, while performing work at a premises owned and/or controlled by Defendant/Third-Party Plaintiff Toll Bros., Inc. (hereinafter "TBI"), and being constructed by Third-Party Defendant JD Framing Contractors, Inc. (hereinafter, "JD Framing"). *See* Exhibit "B". On or about May 9, 2006, TBI. filed a Third-Party Complaint against DHAC and JD Framing, seeking indemnification and/or contribution from DHAC and JD Framing. A true and correct copy of the Third-Party Complaint is attached hereto and incorporated herein as Exhibit "C".

Count I of the Third-Party Complaint purported to set forth a cause of action against DHAC for indemnification and contribution for negligence, alleging that DHAC was responsible for the work and safety of its employees, including Planitiff Kempski, and that DHAC negligently failed to, *inter alia*, secure the floor board which allegedly caused Plaintiff Kempski's injuries. *See Exhibit "C"* at paragraphs 34-36.    Count III of the Third-Party

Complaint purports to set forth a cause of action against DHAC for indemnification and contribution for negligence, alleging that DHAC was responsible for maintaining and controlling a safe work area for its employees. *Id.* at paragraphs 44-47. Count V of the Third-Party Complaint purports to set forth a cause of action against DHAC for breach of contract, alleging that DHAC is contractually obligated to indemnify TBI for, *inter alia*, any negligent act or omission, including the negligent acts or omissions of TBI. *Id.* at paragraphs 54-65. Count VII of TBI's Third-Party Complaint purports to set forth a cause of action against DHAC for declaratory judgment, seeking a declaration that DHAC is contractually obligated to indemnify TBI for any liability imposed on TBI as a result of the matters alleged in Plaintiff Kempski's Complaint. *Id.* at paragraphs 80-84.

After Toll Brothers was served with the Complaint filed by Mr. Kempski, Toll Brothers requested that Penn National Indemnify and provide a defense to Toll Brothers, See letter dated April 5, 2006; hereto attached as Exhibit "D". As a result of the April 5, 2006 letter, Toll Brothers received a letter from Penn National Insurance Company informing Toll Brothers that Penn National would defend and indemnify Toll Brothers under the insurance policy purchased by DHAC. See letter to Michael Kelly; hereto attached as Exhibit "E". Toll Brothers refused to accept the defense that was offered by Penn National through the insurance policy that was purchased by DHAC, however Toll Brothers did accept indemnification under the Penn National Insurance policy.

As a result of Toll Brothers refusing and indemnity that was offered by Penn National, on or about October 12, 2006, DHAC filed an Answer to the Third-Party Complaint, with Affirmative Defenses, and Cross Claim (the "Answer") that was filed by Toll Brothers. A true and correct copy of the Answer is attached hereto and incorporated herein as Exhibit "F". In its

Answer, DHAC asserted that TBI's claims are precluded in whole or in part by the provisions of

Delaware's Worker's Compensation Statute and by the provisions of 6 Del. C. § 2704. *Id.* at

paragraphs 99-100.

On January 26, 2007, a Stipulation signed by all parties was filed dismissing Counts I and

III of TBI's Third-Party Complaint against DHAC, based on the acknowledged application of

the exclusivity provision of the Worker's Compensation Statute.By virtue of the Delaware

Workmen's Compensation Law, an employer is not liable in tort for injury to his employee.

*Kotowski v. A. C. & S. Co., Inc.,* 1990 Del. Super. LEXIS 206, at *4 (Del. Super. 1990); a copy is

hereto attached as Exhibit "G".  Apportionment among joint tortfeasors, permitted under 10 Del.

C. Ch. 63 is not applicable to a plaintiff's employer. *Kotowski v. A. C. & S. Co., Inc.,* 1990 Del.

Super. LEXIS 206, at *5 (Del. Super. 1990).  Count V of TBI's Third-Party Complaint purports

to set forth a cause of action against DHAC for breach of contract. The breach of contract claim

made by TBI is two fold: the first claim is that DHAC has breached the contract by failing to

defend and indemnify TBI for the claims Kempski has made against TBI.  The second claim is

that DHAC has breached its duty to provide insurance for the benefit of TBI.  Count VII of TBI's

Third-Party Complaint purports to set forth a cause of action against DHAC for declaratory

judgment, seeking a declaration that DHAC is contractually obligated to indemnify TBI for any

liability imposed on TBI as a result of the matters alleged in Plaintiff Kempski's Complaint.

## ARGUMENT

I.    SUMMARY JUDGMENT STANDARD

Federal Rule 56(c) permits a Court to grant summary judgment, "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The United States Supreme Court holds that a court must enter summary judgment, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Carter*, 477 U.S. 317, 322-23 (1986).

To obtain summary judgment the moving party must demonstrate that he has met the standards of Rule 56(c). *Carter v. Exxon Company USA*, 177 F.3d 197, 202 (3d Cir. 1999). The summary judgment standard requires that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Thus, only disputes that affect the outcome of a lawsuit will properly preclude the grant of summary judgment. *Id.*

"At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. In deciding a motion for summary judgment "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252.

II.     THE INDEMNITY PROVISION IN THE SUBCONTRACT AGREEMENT BETWEEN DHAC AND TOLL BROTHERS IS VOID AND UNENFORCEABLE

The elements of a breach of contract claim are: the existence of a contract, the breach of an obligation imposed by that contract, and resulting damages to the plaintiff. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  An employer, even though

it has paid workmen's compensation benefits to an insured employee, can be held contractually

liable to a third party where a contract between the employer and the third party contains

provision requiring the employer to: (i) perform work in a workmanlike manner; and (ii)

indemnify the third-party-indemnitee for any claims arising from the employer-indemnitor's own

negligence. *Precision Air, Inc. v. Standard Chlorine of Delaware, Inc.,* 654 A.2d 403, 407 (Del.

1995) (citations omitted).

DHAC is entitled to a judgment in its favor as the indemnity clause in the contract is void

and unenforceable.  Article 3 of the contract between the parties states:

> INDEMNIFICATION: The Contractor [DHAC] shall indemnify, defend and hold
> harmless [TBI] and all of its agents and employees from and against all claims,
> damages, losses and expenses including attorneys' fees in any way arising out of
> or resulting from the performance, existence or condition of the Work under the
> Contract Documents, ***whether or not such claim, damage, loss or expense is
> based in whole or in part upon any negligent act or omission of [TBI]*** or [TBI]'s
> participation in the Work or upon any statutory duty or obligation. [DHAC]
> expressly acknowledges that the parties are contractually allocating these risks to
> [DHAC] and [DHAC] has procured and shall maintain for the term of this
> Agreement the insurance policies...for the purpose of providing a financial means
> to support this indemnification provision. In addition, in any and all claims against
> [TBI] or any of its agents or employees by any employee of [DHAC] or anyone
> for whose acts [DHAC] may be liable, the indemnification obligation under this
> paragraph shall not be limited in any way by any limitations on the amount or type
> of damages, compensation or benefits payable by or for [DHAC] under workers'
> compensation acts, disability benefit acts or other employee benefit acts.
> ...[DHAC], at its own cost and expense, shall indemnify and defend [TBI] against
> such action, suit or proceeding and take such steps as are necessary to prevent the
> entry of judgment or award against [TBI] and to satisfy such judgment or award if
> entered.

Exhibit "A" at paragraph 56 (emphasis added).  The contract thus seeks to require DHAC to

indemnify TBI for all acts of negligence, including those committed by TBI because of this

language, "[T]he Contractor [DHAC] shall indemnify, defend and hold harmless [TBI]...whether

or not such claim, damage, loss or expense is based in whole or in part upon any negligent act or

omission of [TBI] or [TBI]'s participation in the Work or upon any statutory duty or obligation."

Id.

Under Delaware law,

"a covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a...building, structure, appurtenance or appliance...purporting to indemnify or hold harmless the promisee or indemnitee or others, or their agents, servants and employees, for damages arising from liability for bodily injury or death to persons or damage to property caused partially or solely by, or resulting partially or solely from, or arising partially or solely out of the negligence of such promisee or indemnitee or others than the promise or indemnitor, or its subcontractors, agents, servants or employees, is against public policy and is void and unenforceable, even where such covenant, promise, agreement or understanding is crystal clear and unambiguous in obligating the promisor or indemnitor to indemnify or hold harmless the promisee or indemnitee from liability resulting from such promisee's or indemnitee's own negligence.

6 Del. C. § 2704(a). Contracts requiring one party to indemnify another party for the second party's own negligence, whether sole or partial are against the public policy of the State of Delaware, and as such are void and unenforceable. Courts are not free to disregard this declaration of policy. *See J.S. Alberici Construction Company, Inc. v. Mis-West Conveyor Company, Inc., et al.,* 750 A.2d 518, 521 (Del. 2000). See also *Chrysler Corporation v. Merrell & Garaguso*, 796 A.2d 648 (Del. 2002).

Therefore, the indemnity provision of the contract between DHAC and TBI in the instant matter is void and unenforceable as a matter of law, and DHAC is not required to indemnify TBI. However, the Court in *Chrysler*, opined that if a indemnity clause is unenforceable because of 6 Del. C. 2704(a), an insurance policy purchased as a result of the indemnity clause would still be enforceable. The Court's opinion is based on the insurance savings clause that is contained in 6 Del. C. 2704(b).

As there is no genuine issue of material fact with respect to the language of the

foregoing indemnity provision of the contract between the parties, and as the indemnity provision of the contract between the parties is void as a matter of law, DHAC is entitled to judgment on the pleadings in its favor and against TBI as to Counts V and VII of TBI's Third-Party Complaint.

III.    DHAC HAS PURCHASED INSURANCE ON BEHALF OF TOLL BROTHERS IN ACCORDANCE WITH THE DHAC/TOLL BROTHERS SUBCONTRACT

The subcontract agreement between DHAC and Toll Brothers required that DHAC purchase an insurance policy that included Toll Brothers as an additional insured.  *See* Exhibit "A".  The insurance policy to be purchased by DHAC under the subcontract was to have a $1,000,000.00 per occurrence limit.  *Id.*  As a result of Article 4 of the Subcontract agreement, DHAC purchased an insurance policy with Penn National Insurance Company that complied with the subcontract.  After Toll Brothers was served with the Complaint filed by Mr. Kempski, Toll Brothers requested that Penn National Indemnify and provide a defense to Toll Brothers, See letter dated April 5, 2006; hereto attached as Exhibit "D".   As a result of the April 5, 2006 letter, Toll Brothers received a letter from Penn National Insurance Company informing Toll Brothers that Penn National would accept the defense and indemnification of Toll Brothers under the insurance policy purchased by DHAC.  See letter to Michael Kelly; hereto attached as Exhibit "E".  Additionally, Toll Brothers has admitted that Penn National has accepted Toll Brothers' tender of defense and request for indemnification.   *See* Toll Brothers' Answer to Request for Admission hereto attached as Exhibit "H". [1]

In Chrysler v. Merrell & Garaguso Inc., this Honorable Court ruled that a contractual

---

[1]Toll Brothers' response to the request for admission further states that DHAC's contractual duties to defend, indemnify and hold harmless Toll Brothers are not restricted by the Penn National Insurance policy.  *Id.* As previously stated in section (II)(B), the indemnity clause in the Toll Brothers/DHAC subcontract is void under 6 Del. C. 2704(a).

provision requiring a subcontractor to purchase insurance for the benefit of the General Contractor for the purpose of indemnification is enforceable.  In particular, an insurance provision is enforceable, even if the indemnification clause has been deemed invalid under 6 Del. C. § 2704(a).  Chrysler v. Merrell & Garaguso Inc., 796 A.2d 648 (Del. 2002).  The Delaware Supreme Court in Chrysler, supplemented their analysis of 6 Del. C. § 2704(a) from J.P. Alberici Co. Inc. v. Mid West Conyers Inc., 750 A.2d 518 (Del. 2000), which stated that 6 Del. C. § 2704(a) provides that a contractual provision requiring one party to indemnify another for that party's own negligence is against public policy and is void and unenforceable.

In Chrysler v. Merrell & Garaguso Inc., this Court identified the insurance savings provision in 6 Del. C. §2704(b) as the reason for the decision.  Chrysler v. Merrell & Garaguso Inc., 796 A.2d 648, 653 (Del. 2002).  6 Del. C. §2704(b) provides, "[N]othing in subsection (a) of this section shall be construed to void or render unenforceable policies of insurance issued by duly authorized insurance companies and insuring against losses or damages from any causes whatsoever."

"[T]he insurance savings provision reflected in §2704(b) is a statement of legislative purpose that cannot be negated by an all encompassing construction of the anti-indemnification policy set forth in § 2704(a).  The savings provision has a meaning only if it cannot be used as a shield by insurers to decline coverage for insurance once purchased and duly issued to an insured, however identified or designated."  Chrysler v. Merrell & Garaguso Inc., 796 A.2d 648,653 (Del. 2002).  The requirement within the DHAC/Toll Brothers subcontract that requires DHAC to purchase insurance for the benefit of Toll Brothers is therefore valid and enforceable. DHAC through there insurance carrier has adhered to the subcontract and Delaware law by purchasing the proper insurance policy as required by the subcontract and providing a defense

and indemnification under the purchased policy of insurance.

Toll Brothers' causes of action against DHAC are for the breach of contract because DHAC has failed to provide a defense and indemnification Toll Brother and for failure to purchase insurance are required by the subcontract agreement.  The other remaining cause of action is for a Declaratory Judgment that DHAC is contractually obligated to indemnify Toll Brothers for the injuries suffered by Mr. Kempski. As previously argued in Argument section II, the indemnification clause in the subcontract agreement is void.  Additionally,  DHAC did purchase an insurance policy pursuant to the subcontract agreement.  In fact, Toll Brothers requested that Penn National validate the defense and indemnification under the policy and Penn National has done so.

## CONCLUSION

Third Party Defendant, DHAC, respectfully requests that Summary Judgment be entered in its favor and against Plaintiff because the indemnification language in the subcontract renders the indemnification requirement void.  Further, DHAC purchased a policy of insurance with Penn National Insurance Company as requested by the subcontract agreement and through this insurance policy a defense and indemnification are being provided to Toll Brothers.

REGER RIZZO KAVULICH & DARNALL LLP
*/s/ Louis J. Rizzo, Jr., Esquire*
Louis J. Rizzo, Jr., Esquire
Delaware State Bar I.D. No. 3374
1001 Jefferson Plaza, Suite 202
Wilmington, DE 19801
(302) 652-3611
Attorney for Third Party Defendant
Delaware Heating and Air Conditioning Services, Inc.

Dated: March 20, 2008

# EXHIBIT A

Contract No:
Community:  **Brandywine Hunt**

## CONSTRUCTION AGREEMENT

This Construction Agreement ("Agreement") is between TOLL BROS., INC. ("Toll") and:

CONTRACTOR  Delaware Heat and Air
ADDRESS:  713 Millcreek Lane  Bear DE 19701
PHONE:  302 - 738 - 4669
FACSIMILE:  302 - 738 - 4680    CONTACT:  Frank Bartuski
E-MAIL:

Contractor, representing that it is skillful and experienced in the craft  HVAC
and holds all necessary licenses, agrees to furnish all labor, services, materials and equipment necessary to perform and complete its obligations under the Agreement in a good and workmanlike and timely manner. The construction work ("Work") performed will be in accordance with the specifications below, as prepared by Toll and any and all revisions, addendums, schedules, exhibits and riders thereto; and general and special conditions issued in connection therewith. The Contractor agrees that the Work shall be done subject to the final approval of Toll.

THE WORK: The Work shall consist of but not necessarily be limited to the following:

Reference Exhibit "A", page(s) 1 through ___5___, Toll architectural plans, construction detail documents and detail documents for specifications (collectively referred to as "Specifications").

PAYMENTS:
Toll shall pay Contractor for the performance of the Work the sum of $ varies.
Toll shall pay Contractor progress and final payments in accordance with the payment schedule below.

As a condition precedent to any payments, Contractor, if requested, shall submit a payment request form in a form determined by Toll. The payment request form shall include release and certification by Contractor to Toll that no mechanics' liens or claims for mechanics' liens have been or could have been filed or asserted against the Project in connection with the Work as of the date of such submission. The final payment shall not be made until Contractor delivers to Toll a complete release of liens.
Reference Exhibit "B", page(s) 1 through ~~3-5~~ for "Payment Schedule," ( 1 - 3 )
Reference Exhibit "C", page(s) 1 through ___1___ for "Additional Work Price List."

It is understood that the execution of this cover page binds the Contractor to all pages of Exhibits attached as referenced above and contained herein.

**It is agreed between Toll and Contractor that the articles printed on Page Two are part of this Agreement.**

ARBITRATION: Contractor hereby agrees that any and all disputes or disagreements arising in any way out of this Agreement or the performance of the work, including but not limited to, the payment of invoices, accidents, indemnification of Toll by Contractor, naming Toll as an Additional Insured, injuries, breach of contract, representations and/or omissions by Toll, on-site and off-site conditions and all other torts and statutory causes of action ("Claims") shall be resolved by binding arbitration in accordance with the rules and procedures of Construction Arbitration Services, Inc or its successor, or an equivalent organization selected by Seller. In addition, Contractor agrees that Contractor may not initiate any arbitration proceeding for any Claims unless and until Contractor has first given Toll specific written notice of each claim (at 3103 Philmont Avenue, Huntingdon Valley, PA 19006, Attn: Contractor Dispute Resolution) and given Toll a reasonable opportunity to settle the dispute.

Contractor warrants that the information supplied by Contractor in the Request for Bid is truthful and accurate.
In witness whereof, the parties hereto have executed this Agreement on the day and year written below.

FED I.D. NO.:  51 0362156

CONTRACTOR:
By:  Delaware Heating and Conditioning
Print Name:  Frank J Bartuski    Services LLC
Title:  President
Date:  8/18/04

TOLL BROS., INC.:
By:
Print Name:  Kevin Grubb
Title:  Project Manager
Date:  8/23/04
Senior Manager Initials:

☐ Check if secondary contract so budget will not be loaded - For File Only.

TB 00035

**Article 1. TIME OF PERFORMANCE:** Time being of the essence hereunder, Contractor shall begin, prosecute and complete the Work in accordance with Toll's construction schedule. Contractor shall begin the Work when directed by Toll and shall complete, prosecuting or completing the Work by the act of omission of Toll, or ...

**Article 2. CHANGES IN THE WORK:** Toll may at any time, without notice to Contractor's surety, issue written change orders to Contractor requiring alterations or additions to or deletions from the Work. Contractor must not alter, add to or delete from the Work ...

**Article 3. INDEMNIFICATION:** The Contractor shall indemnify, defend and hold harmless Toll and all of its agents and employees from and against all claims, damages, losses and expenses including attorneys' fees ...

**Article 4. INSURANCE:** Before beginning the Work, Contractor shall procure and shall maintain for the term of this Agreement the following types of insurance from a company or companies with an A.M. Best rating of not less than B, VI:

A. **General Liability –**
   Type: Occurrence Basis
   Limits:
   Per occurrence
   General Aggregate ............ $1,000,000.
   Products/Completed ............ $2,000,000
   Operations aggregate
   Special Provisions: ............ $1,000,000
   Additional Insured Endorsement
   (Endorsement CG 20 10 11/85 or its equivalent)

B. **Vehicle Liability –**
   Limits:
   Bodily Injury/Property
   Damage per occurrence
   Special Provisions: ............ $1,000,000
   Coverage shall include owned, hired and non-owned vehicles ...

C. **Workers' Compensation –**
   Limits:                                    Statutory

D. **Employer's Liability –**
   Limits:
   Each Accident
   Disease – Policy Limit ............ $100,000
   Disease – each employee ............ $500,000
                                        $100,000

**Article 5. MECHANICS AND/OR MATERIALMEN'S LIENS AND CLAIMS:** TO THE EXTENT PERMITTED BY APPLICABLE LAW, CONTRACTOR HEREBY EXPRESSLY WAIVES AND RELINQUISHES THE RIGHT TO HAVE, FILE OR MAINTAIN ANY MECHANIC'S AND/OR MATERIALMEN'S LIENS AND/OR MATERIALMEN'S NOTICE OF INTENTION TO LIEN, AGAINST THE PROJECT, THE BUILDINGS THEREON OR THE GROUND APPURTENANT THERETO. ...

**Article 6. ADDITIONAL OBLIGATIONS OF CONTRACTOR:** Contractor shall (a) provide and supply, in the performance of the Work, a sufficiency of properly skilled and slow methods and an adequacy of materials, tools and equipment to prosecute ...

**Article 7. DEFAULT:** In the event that Contractor shall for the bankruptcy or have filed against it a bankruptcy case, make ...

**Article 8. OTHER ITEMS:** Contractor represents that prior to submitting its proposal, Contractor carefully examined all of the contract documents ...

**Article 9. MISCELLANEOUS:** Payments made hereunder shall not be evidence of the proper performance of all or any part of the Work or its acceptance by Toll. ...

**Article 10. LIMITATION OF LIABILITY:** Toll shall not be liable to Contractor, its agents, servants, workmen or employees, for any consequential damages arising from the breach of this Agreement and/or Toll's negligence, and Toll's sole liability shall be limited ...

**Article 11. OPTION POLICY:** Contractor agrees not to sell options, install extras or to do work of any kind or description on a new home which is part of the described work by a period of 120 days after the settlement or closing day for the home. ...

**Article 12. SAFETY PRECAUTIONS AND COMPLIANCE:** Contractor has agreed to comply with and has full knowledge of the requirements herein contained regarding the safety precautions to be taken on all construction projects. ...

**Article 13. NON-EXCLUSIVE TERMINATION:** Contractor agrees that this is not an exclusive contract for the performance of the Work and that Toll can assign all or any portion of the Work to another contractor ...

**Article 14. SEVERABILITY:** To the extent that any provision of this Agreement may be declared unenforceable, such provision shall be deemed stricken and though never part of this Agreement; otherwise, every other provision hereof and this Agreement shall remain in full force and effect. ...

**Article 15. GOVERNING LAWS:** This Agreement shall be governed by the laws of Pennsylvania.

Contract No.:
Community:    Brandywine Hunt

Contractor:
Toll:    _[signature]_    Dated: _8/16/04_
                          Dated: _8/23/04_

_[signature]_  8/25/04

TB 00036

Project: *Brandywine Hunt (BH)*
C.C. #4451, 4452, 4453/4454
**EFFECTIVE DATE: 08-01-04**

## EXHIBIT "A"

## H.V.A.C.
### (Projects with Gas Furnace Standard)

Subcontractor understands that all material supplied and work performed under this contract shall be in accordance with all P.W.C. standards, all BOCA National, Federal, State, (Act 222 PA Only) Local codes, O.S.H.A. safety regulations and be in accordance with Toll Bros., Inc. standard details located in the construction trailer.

Subcontractor shall be responsible to supply contractor with current copies of all MSDS (Material Safety Data Sheets) applicable to the product(s), material(s), additives, etc. which will be used in the execution of this contract. Materials which qualify as hazardous materials must be properly labeled, must not be disposed of on Toll Bros., Inc. property, and shall be disposed of at subcontractor's sole expense in full compliance with all applicable federal, state, and local statutes, rules, and regulations, etc...

Subcontractor shall report to TBI construction manager any unsatisfactory conditions that may affect his finished product before he begins work. In the event this subcontractor puts "good work over bad work" this Subcontractor will be held equally responsible for the correction or repair. It is this subcontractor's responsibility to inspect his own work for both quality and completeness and to protect the materials and work of all other trades preceding him.

H.V.A.C. subcontractor shall be responsible to perform all work in accordance with the latest revised mechanical drawings for each appropriate model. The mechanical drawings represent suggested designs, sizing and layout. Any errors or deficiencies in the plans should be brought to the attention of the Toll Bros., Inc. Project Construction manager and/or the Project Manager so that a solution can be arrived at prior to beginning work. The H.V.A.C. contractor is ultimately responsible for the guaranteed efficient operation of this H.V.A.C. system.

Subcontractor shall obtain and pay for all applicable H.V.A.C. permits and inspections. Proof of valid permit must accompany invoice at rough, except New Jersey.

Subcontractor understands that the standard system in each living unit shall be a gas furnace with central air conditioning.

All service work shall be completed within two (2) days of request. All emergency service work shall be completed within twelve (12) hours of request by Toll Bros., Inc. Emergency phone number with a 24 hour answering service and warranty envelope shall be attached to unit.

This subcontractor's personnel shall be instructed by subcontractor to treat all homeowners and their property with the utmost courtesy and respect. Subcontractor's personnel must also be instructed to refrain from derogatory or sarcastic remarks concerning work performed by other trades or by Toll Bros., Inc. Subcontractor or their employees shall not contact Toll Brothers' homebuyers without the express written consent of the Project Manager.

The subcontractor shall be responsible for and agrees to provide on a routine and periodic basis, in-depth safety training for subcontractor's employees to fully cover all aspects related to the type of work the particular tradesman/laborer is performing for Toll Brothers. Such training shall be in accordance and compliance with federal, state, local and OSHA safety directives and regulations.

This subcontractor shall take whatever steps necessary to protect carpet, vinyl, or hardwood flooring from dirt or damages, should it become necessary to enter the home after these materials have been installed.

The heating system shall provide a minimum of 70 degree heat when measured 5' above the floor in the center of all rooms when out-side temperature is at the ASHRAE winter dry bulb 97.5% design criteria for the specified area.

Subcontractor shall be responsible to keep all community roadways clean. Any mud or debris deposited by subcontractor's employees or vehicles must be removed at subcontractor's expense.

TB 00037

Project:  D.H.
C.C. #4451, 4452, 4453, 4454
**EFFECTIVE DATE: 08-01-04**

## EXHIBIT "A"

## H.V.A.C.
### (Projects with Gas Furnace Standard)

The cooling system shall provide a minimum of 18 degrees F. differential from inside temperature to outside temperature when measured 5' above the floor in the center of all rooms when outside temperature is at or below 94 degrees F. Calculations are to be based on ASHRAE summer dry bulb at 1% design criteria for the specific area.

**NOTE:** PA Act 222 allows a +60% margin on heating equipment to compensate for the oversizing needed to meet cooling requirements.

When options affecting heating and cooling loads are selected, subcontractor is responsible to submit heating and cooling load calculations to Project Manager prior to the installation of the HVAC system. The invoice will not be paid without receipt of the heating and cooling load calculations.

Subcontractor shall provide the following guarantees:

One year warranty on all parts, and labor.
Five year warranty on all compressors.
Ten year warranty on all heat exchangers.
Two year warranty on all refrigerant line leaks and ductwork separations.

All warranty periods begin on the day of settlement.

After initial one year warranty on all parts and labor has expired, subcontractor shall service samples (labor only) at no charge to Toll Bros., Inc. for as long as subcontractor is under contract.

After initial one year warranty has expired on each homeowner's H.V.A.C. system, subcontractor shall provide the homeowner with an optional service contract.

Subcontractor shall send ___5___ personnel to the job site to complete each unit's rough in ___4___ working days and finish in ___3___ working days. Supervision must include a professional representative who looks and acts like a qualified tradesman and who can communicate clearly.

Emergency phone number and warranty envelope shall be affixed to unit.

Subcontractor is responsible to clean up all debris created by his trade before leaving the property, each day.

In communities with T.B.I. recycling areas, all applicable recyclable materials shall be transported to the recycling center and deposited in the proper dumpster. All debris shall be compacted. Otherwise, all debris caused under this contract shall be removed by subcontractor. If not, subcontractor shall be backcharged at a rate of 1 1/2 times the cost of removal.

Subcontractor shall furnish serial numbers for all warrantable items. Said number shall be affixed to staged payment invoice for payment. Warranty envelopes, noting lot number must be turned in to field construction manager prior to last stage payment.

Subcontractor shall protect against theft or vandalism by securing in place all equipment. Stolen items will not be paid for.

SCOPE OF WORK:

Subcontractor shall be responsible for the following:

Supply all labor, materials, equipment, and supervision necessary to complete all work covered under this contract.

TB 00038

Project ~~SPH~~
C.C. #4451, 4452, 4453, 4454
EFFECTIVE DATE: 08-01-04

## EXHIBIT "A"

## H.V.A.C.
### (Projects with Gas Furnace Standard)

Supply and install _____**RM-UC**(#1)_____ 90% direct vent and 10 SEER efficiency gas furnaces and air conditioning units as per the model #, and sizes stated in Model Specifications (Note: Direct Vent is not required in North Carolina). **[NOTE: NJ Energy Star Program requires a minimum of 92% efficiency direct vent gas furnaces and a minimum 13 seer air conditioning units (check energy star calculations by model for exact efficiency requirements and sizing, Carrier brand only.)**

*Supply and install all ductwork with return air plenums. All supply ducts shall be mastic sealed and constructed in a leak-free, workmanlike manner. All supply systems must be fully ducted to include sealing all required seams and joints on all supplies, stack heads, and boxes to the drywall or subfloor. No flex duct is to be installed in basements or between first and second floors.

*When allowed by code, panned stud wall cavities and the spaces between solid floor joists to be utilized as air plenums shall not convey air from more than one floor level; not be a part of a required fire-resistance-rated assembly and not be used as a plenum for supply air. Furthermore, panned stud wall cavities and joist space plenums shall be isolated from adjacent concealed spaces by tight-fitting fire blocking in accordance with all IRC, IMC, National, Federal, State and Local codes.

*[NOTE: NJ Energy Star Program requires that all return plenums be fully ducted (i.e.: without the use of panned joists or wall cavities for air return) in a leak-free manner with joints and return duct boots that are screwed and sealed with metal foil tape. Air leakage must be less than 10% on both supplies and returns.]

*When panning joists or studs for return air ducts, subcontractor shall use __**Blue** (#2) Thermoply__ Regardless of type of panning, subcontractor shall caulk all panning to wood member, to eliminate air infiltration.

When installing flexible ductwork for Nutone bathroom exhaust fans a maximum length of 14' may not be exceeded unless otherwise specifically prescribed by the flexible duct manufacturer.

Supply and install all ductwork vented to exterior for bathroom exhaust fans. (Final electrical hook-up shall be done by electrical subcontractor.)

Supply and install all ductwork for downdraft cooktop including outside wall cap (if applicable, wall cap must be as supplied or recommended by appliance manufacturer). Ductwork shall be a minimum of 6" in diameter or 3 1/4" x 10" per manufacturer's specifications (5" diameter is not acceptable, except when straight duct run is less than 6' and only one elbow is used).

Supply and install all thermostats and wiring. **(NOTE: NJ Energy Star requires digital set-back thermostats).** Model homes must have automatic thermostats manufactured by Hunter "Autotemp Plus" model #44422 or Honeywell Chronotherm IV model #T8600D2028 Auto Change-Over.

Supply and install all refrigerant and condensate lines. Refrigerant piping shall be long enough to allow for settlement of exterior units.

Upon completion of installing air conditioning equipment, sub-contractor shall charge the system with refrigerant as per manufacturer's specifications.

Supply and install air conditioning compressor upon fiberglass or concrete pad(s). (Subcontractor is also responsible for supplying the compressor pad.) Units shall be set 3' from house. Pad(s) shall be set upon unexcavated ground to properly support unit. Any outside unit that settles more than 1 1/2" per horizontal foot during the first year shall be straightened by the sub-contractor at no charge.

---

(#1) Trane, Lennox, York or Carrier/Bryant (whichever provides lowest cost to Toll-Brothers).
*(#2) Blue Thermoply, galvanized sheet metal, minimum #30 gauge.

TB 00039

Project: ~~5/7~~
C.C. #4451, 4452, 4453, 4454
EFFECTIVE DATE: 08-01-04

# EXHIBIT "A"

## H.V.A.C.
### (Projects with Gas Furnace Standard)

**NOTE:** Plumber shall be responsible for final gas connection to furnace.

Subcontractor shall supply and install the required size piping (based upon length of run) for the direct vent furnace(s). No "B" vent shall be used. Exterior vent protrusion(s) shall not be in front of the house, shall be in non-intrusive location and shall be a 2 pipe system with 1 pipe for intake & 1 pipe for outtake. This shall not be within 1' of any window, door, dryer or downdraft vents.

Supply and install filter plenum with washable permanent filters. If authorized by Toll Bros. to place heating unit(s) in the attic space, unit(s) shall have a centralized return with the filter behind the return grill for easy maintenance and access by the homeowner.

In basement situations, any time gas furnace is located more than 5' from an exterior basement wall and soil conditions permit, the condensate line shall drain directly into a hole in the basement slab. Condensate pumps shall only be used on slab homes or at the Project Manager's discretion. If used, subcontractor shall install a condensate pump and line to pump water to the exterior of the house next to the condensing unit. If gas furnace is within 5' of an exterior basement wall subcontractor shall run a line from air handler into basement perimeter trough.

Supply and install one dryer vent in each living unit.

Maximum length of 4" diameter rigid metal duct:

| # of 90 degree Bends | L.F. |
|---|---|
| 0 | 36 |
| 1 | 26 |
| 2 | 16 |

Maximum length of 4" diameter flexible white duct:

| # of 90 degree Bends | L.F. |
|---|---|
| 0 | 24 |
| 1 | 18 |
| 2 | 10 |

Supply and install all necessary grilles and registers, Hart & Cooley or equal approved by Toll Bros., Inc. Project Manager. (Grilles shall be installed prior to painting.)

Hanging all basement ductwork from straps at intervals of not more than 10'. All supply ductwork shall be held down 1" from structural members and subflooring so that it does not rattle when floor is walked on.

Subcontractor shall install temporary sheet metal covers over all floor register openings after installation of rough ductwork.

Insulated ductwork in attic (if applicable) shall have a minimum R-Value of 5. [NOTE: R-6 duct insulation in attic is required in NJ Energy Star constructed homes)

Install all thermostats and registers in the same location as per drawings. Under no circumstances will design changes be allowed without prior approval of Project Manager.

Make all cutouts in floors and walls: subcontractor shall be responsible to install metal straps to prevent further separation of plates that have been completely cut.

Gas furnace will be set on common bricks, rubber pad or 4" solid cinder blocks so that base of unit is not sitting directly on concrete floor. Bottom of air handler must be enclosed with a metal pan.

TB 00040

Project: B-H
C.C. #4451, 4452, 4453, 4454
**EFFECTIVE DATE: 08-01-04**

## EXHIBIT "A"

## H.V.A.C.
### (Projects with Gas Furnace Standard)

Subcontractor shall add their name and emergency phone number, and insert the following "Heat and Air Conditioning Trouble Shooting Guide" in a plastic sleeve. This sheet is to be attached to the furnace.

### HEAT AND AIR CONDITIONING TROUBLE SHOOTING GUIDE

If you experience no heat in your home, please check the following:

1.    Is the thermostat in the "heat" and "auto" selection position?

2.    Is the temperature selector on the thermostat above the room temperature indicator?

3.    Is the Red switch at the top of the basement steps in the "ON" position?

4.    Is the switch on the furnace in the "ON" position?

5.    Is the door to the furnace on and closed tightly?

6.    Is the circuit breaker in the electrical panel box switched to the "ON" position?

If you experience no air conditioning in your home, please check the following:

1.    Is thermostat in the "air conditioning" and "auto" selection positions?

2.    Is the temperature selector on the thermostat below the room temperature indicator?

3.    Is the Red switch at the top of the basement steps in the "ON" position?

4.    Is the switch on the furnace in the "ON" position?

5.    Is the door to the furnace on and closed tightly?

6.    Is the circuit breaker in the electrical panel box switched to the "ON" position?

7.    Is the disconnect, located outside at the compressor unit, "ON" (plugged in)?

If you have checked all of the above and still do not have heat or A/C, call   302-738-4669 at _____ to set up an appointment.

T:\Contracts\East Region\HVAC-GAS.doc

Project:
C.C. #4451, 4452, 4453, 4454
**EFFECTIVE DATE: 08-01-04**

## EXHIBIT "A"

## H.V.A.C.
### (Projects with Gas Furnace Standard)

Supply and install label on gas furnace showing subcontractors name and phone number for service.

Subcontractor shall add their name and emergency phone number, and insert the following "Heat and Air Conditioning Trouble Shooting Guide" in a plastic sleeve. This sheet is to be attached to the furnace.

Upon Toll Bros., Inc. Construction manager's request subcontractor shall set furnace in rough ductwork stage to provide heat to house while under construction.

Install all ductwork in a manner to prevent oil canning. All ductwork shall comply with ASHRAE and/or SMACNA regulations with regard to gauge and bracing requirements.

Supply and install all necessary under slab P.C.D. coated spiral ductwork to all areas that cannot be heated or cooled from above as per drawings.

WORKMANSHIP:

Subcontractor shall be responsible to meet the following requirements:

Any standard or optional multiple zone systems shall have both gas furnaces located in basement area. Heat system shall be balanced so that the maximum temperature differential between any two rooms is 5 degrees F., measured in the center of each room 5' above the floor.

Any holes cut in floors or walls in error shall be patched immediately by subcontractor or subcontractor shall be back charged if work must be done by others. Subcontractor shall also be responsible for sealing any holes subcontractor places through masonry foundation walls or exterior sheathing.

Consecutively bored holes must be placed in the center of the joist vertically, and restricted to the middle third of the joist horizontally. Holes can be no larger than three inches (3") in diameter, with a minimum center to center spacing of two times the hole diameter. A series of holes is limited to a twelve inch (12") linear distance, between which is a twelve inch (12") space of solid, uncut joist. Hole placement is not to exceed a maximum total distance of thirty six inches (36").

Individually bored hole diameters shall not exceed 3 1/8" for 2 x 10 joists or 3 3/4" for 2 x 12 joists. Bored holes must not be within 2" of the top or bottom of joists. Where allowed, notches in the top and bottom of floor joists shall not exceed 1 1/2" for 2 x 10 joists or 1 7/8" for 2 x 12 joists, and shall not be located in the middle third of any joist span. Do not notch or cut any paralam beams or cantilevered joist. Should this regulation be violated, the building inspector can require that the joist be taken down and replaced, in which case, the subcontractor responsible shall be back charged for labor and materials required to replace the joist and any cost billed to the contractor by another subcontractor to remove and replace his work within the area

When piping or ductwork is placed in an exterior or interior load bearing wall, necessitating a cutting of top plate by more than 50 percent of its width, the plate shall be reinforced with 16 gage steel angle spanning the distance between adjacent studs.

Trunk line dampers shall be installed for proper balance and air control. All feeder lines shall be properly sized for efficient air flow to each room. This system must not rely on adjusting air registers for balancing.

When routing duct work, subcontractor shall not cut floor joists or beams. If diagonal bridging is removed, this subcontractor shall be responsible to install scrap 2x lumber at the base of the floor joists to maintain the integrity of the floor system.

All cuts, notches & drilling of JSI joists shall be done according to manufactures specs.

TB 00042

Project: *S A*
C.C. #4451, 4452, 4453, 4454
**EFFECTIVE DATE: 08-01-04**

## EXHIBIT "A"

### H.V.A.C.
### (Projects with Gas Furnace Standard)

All ductwork shall be kept away from exterior walls, and wall or ceilings next to unconditioned areas; in the event that ductwork must be run in such areas ducts shall be insulated to an R-6.

All wall return registers shall be installed 10" down from the rough ceiling to the top of the return and with louvers facing up. Heat supply registers installed in floor under windows shall be installed a minimum of 6" from the wall.

No return air grill is to be installed directly behind another return air grill. If 2 return air grills are on a common wall they must be staggered.

All bath supply vents shall be installed 6" above finished floor to bottom of grill and not located on outside wall. Where vent can not be installed in the wall, a floor register may be installed.

Wall thermostats shall be installed in locations as per drawings.

Flexible duct connector must be installed where supply duct work connects to air handler.
Staged Payment Breakdowns:

The following schedule shall be followed for all staged payment breakdowns:

| COST CODE | DESCRIPTION | PERCENTAGE OF CONTRACT TOTAL |
|-----------|-------------|------------------------------|
| 4451 (130) | H.V.A.C. - Rough Ductwork | 30% |
| 4452 (131) | H.V.A.C. - Gas Furnace Set | 30% |
| 4453 (132) | H.V.A.C. - Compressor & Thermostat Set | 30% |
| 4454 (133) | H.V.A.C. - Registers | 10% |

TB 00043

PROJECT: _B. Hunt_
C.C. #4451, 4452, 4453, 4454
**EFFECTIVE DATE: 08-01-04**

Page 1 of ___

## EXHIBIT "G"
## H.V.A.C.
## (Projects with Gas Furnace Standard)

PRODUCTS USED THIS CONTRACT
Please check below which manufacturers below will be used under this contract at this community. *Be advised that any time a product is to be used other than specifically listed below, PMs must attach a completed Product Variation Request with sound rationale for use. **NOTES:** 1) Contracts submitted without completing this information will not be loaded into JD Edwards and will be returned; 2) It is imperative to insure accuracy in reporting which manufacturer you will be using. Failure to do so will delay or eliminate receipt of your rebates.

Thermostats (Type: Setback or Auto Change Over -- Circle as applicable (No Project Exception Required))

_____  Hunter Type: Standard/Programmable Setback/Auto Change Over. Model #:  _____

**X**  Honeywell Type (Standard) Programmable Setback/Auto Change Over. Model #: BAYSTAT 305

_____  Carrier Type: Standard/Programmable Setback/Auto Change Over. Model #:  _____

_____  Bryant Type: Standard/Programmable Setback/Auto Change Over. Model #:  _____

_____  Other _____ Type: Standard/Programmable Setback/Auto Change Over. Model #:  _____

Furnaces/Air Conditioning

**X**  Trane

_____  Trane High Efficiency

_____  Bryant

_____  Bryant High Efficiency

_____  Bryant Puron

_____  Carrier

_____  Carrier High Efficiency

_____  Carrier Puron

_____  York 10 Seer/80%

_____  York 12 Seer/90%

_____  Lennox

_____  *Other _____

*Note: Only Trane or Carrier/Bryant may be used in Pennsylvania communities. In New Jersey, Connecticut, Massachusetts, New Hampshire, Rhode Island, North Carolina, South Carolina, Virginia & Maryland Carrier/Bryant only may be used.

TB 00044

T:\Contracts\East Region\HVAC-GAS.doc

PROJECT: Brandywine Hunt

C.C. #4451, 4452, 4453, 4454

**EFFECTIVE DATE: 08-01-04**

Page 2 of 2

## EXHIBIT "G"

## H.V.A.C.
### (Projects with Gas Furnace Standard)

Humidifiers (No Project Exception Required)

_____  Honeywell

___✓___  April-Aire

_____  *Other  _____

Filters (No Project Exception Required)

_____  Honeywell

___✓___  *Other  White Rodgers

Average # of zones per house

_____  1

_____  2

_____  3

_____  4

_____  *Other  _____

Toll Brothers Project Manager    Kevin H. Grubb
                                 (Please Print Name)

                                 Kevin H. Grubb
                                 (Signature)

Date: 8/23/04

TB 00045

PROJECT: __Brandywine Hunt__ _____    Page 1 of __10-5__

## EXHIBIT "B"
## PAYMENT SCHEDULE SPECIFICATIONS
## FOR SUBCONTRACTOR AGREEMENT

All prices in Payment Schedule become effective with all new living units **STARTED AFTER** __June 1, 2004__ **(EFFECTIVE DATE)** .The following lots were started prior to the above referenced date and shall be invoiced at the old contract prices as per the previous Subcontract Agreement# __NA__ :

| Lot | ; lot | ; lo t | ; lot | ; lo t | ; lo t . |
| lot | ; lot | ; lo t | ; lot | ; lo t | ; lo t |

(NOTE TO P.M.: Above clause only applies to renegotiated contracts; would not apply to vendors with whom we don't have a previous Subcontract Agreement with.)

All prices are firm for all work started on or before __June 1, 2005__ **(EXPIRATION DATE)**, and shall automatically renew for 30-day periods until written notice is given by either party; such written notice must be given at least 30 days prior to the expiration of the existing contract or any of the automatic renewal periods.

*Each invoice for base house and/or options must include a REFERENCE INVOICE NUMBER and must be submitted in writing for lump sum amounts as per Payment Schedule. The following information must be included: VENDOR NAME, VENDOR NUMBER, DATE, PROJECT NAME, LOT NUMBER, MODEL NAME, COST CODE, and OPTION NUMBERS. (The above information can be found in the Payment Schedule.)

Subcontractor understands that Base House and options for various lots may be billed on one invoice provided they are clearly separated on the invoice and that the lump sum contract amount (per cost code category) is shown next to each base house and/or option. Field conditions must be billed separately.

All invoices for work other than Base House or options must be authorized through the issuance of a Toll Bros., Inc. "Field Work Order". Copies of the Toll Bros., Inc. "Field Work Orders" will be given to subcontractor upon authorization of the work by the Construction Manager and prior to commencing work.

Upon completion of work authorized by "Field Work Order", subcontractor must submit "Invoice Copy" to Construction Manager for signature, retaining the "Subcontractor Copy" of work order for subcontractor's own records. Invoicing for work other than Base House or options shall be in accordance with the "Additional Work Price List" attached which includes all applicable taxes.

Signed "Invoice Copy" shall then be submitted for payment.

TB 00046

PROJECT: Brandywine Hunt _____    Page 2 of ~~4~~ ~~~~5~~~~

Prior to purchasing materials for model homes, subcontractor shall meet with community P.M. to review model home programs available to Toll Bros., Inc. Subcontractor agrees to credit Toll Brothers' model home invoice with any manufacturer's model home rebates and/or to reduce the invoice by the amount of any "no charge" materials supplied by a manufacturer for the model home.

### EXHIBIT "B"

### PAYMENT SCHEDULE SPECIFICATIONS
### FOR SUBCONTRACTOR AGREEMENT

Subcontractor understands that all Base House and option prices in Payment Schedule reflect all Specifications stated.

Payment shall not be made until work outlined in Specifications is 100% complete and current insurance certificate is on file.

All options shall be billed when the standard house is 100% complete; no payment of option invoices will be made until this time.

All invoices received without the proper information as stated shall be returned unpaid. The invoices can then be resubmitted with the proper information included for payment.

All invoices and other correspondence shall be submitted to Toll Bros., Inc., c/o
Construction trailer, Brandywine Parkway, Wilmington DE _____

_____

no later than 10:00 A.M. Tuesday ten days prior to the Friday that checks are to be issued for that project. Invoices received by any other means will be refused and held until the next regular pay cycle. All invoices received after this deadline will also be held until the next regular pay cycle.

All invoices must be submitted within 90 days of completion of the prescribed work for each Base House, option or Field Work Order. Invoices submitted after 90 days of the completion of the work will not be accepted nor paid and shall be considered null and void.

In order to insure timely resolution of outstanding invoices, any invoices which are unpaid for any reason must be appealed in writing to the Project Manager within 90 days of the original due date of the invoice. Invoices which are not appealed in writing within 90 days of the original due date will not be accepted.

25 _____ % retainage shall be held on each of the first    (#1) 4 ____
invoices until a total of $   (#2) $10,000— is held. Retainage to be held until project is completed and all service work is satisfied. (Note to P.M.: Total retainage should equal the contracted price of one home.)

TB 00047

Prices in Payment Schedule are subject to a   0 __ % (percent) discount
E:\Contracts\SUB PAYMENT SPEC.doc
EFFECTIVE DATE: 2/01/03

PROJECT:  Brandywine Hunt                    Page 3 of ~~4C~~ 5

for all invoices paid within 20 days of receipt of invoice in the appropriate Toll Bros., Inc. office stated above.

Minimum retainage is one complete home for all trades except: rough carpentry, finish carpentry, wood siding installation, stone, brick, stucco, siding and flooring. These trades will require a fixed retainage of $2000.00 per community. Project Manager is advised that these amounts are the minimum approved retainages. If a vendor has no past track record, Project Managers shall increase retainage as he deems necessary.

(#1) maximum of 4 invoices
(#2) Dollar amount must be indicated (centralized corp. retainage, if applicable, excepted).

TB 00048

PROJECT: *Brandy wine Hunt*    Page 4 of ___5___

## EXHIBIT "B"

## PAYMENT SCHEDULE SPECIFICATIONS
### FOR SUBCONTRACTOR AGREEMENT

**MODEL HOMES:**

Prior to purchasing materials for model homes, subcontractor shall meet with community P.M. to review model home programs available to Toll Bros., Inc.  Subcontractor agrees to credit Toll Brothers' model home invoice with any manufacturer's model home rebates and/or to reduce the manufacturer for the model home.  Additionally, there may be instances when the community P.M. may supply the subcontractor with certain materials for the model home, in which case the subcontractor agrees to document and credit the model home invoice for materials furnished by Toll Brothers, Inc.

Subcontractor agrees to the following concessions with regard to labor/materials for all model homes to be constructed in this community:

See exhibit E if applicable

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

The above will be reflected, as required, on model home invoices.

TB 00049

E:\Contracts\SUB PAYMENT SPEC.doc
EFFECTIVE DATE: 2/01/03

PROJECT: _Brandywine Hunt_    Page 5 of ___5___

EXHIBIT "B"

PAYMENT SCHEDULE SPECIFICATIONS
FOR SUBCONTRACTOR AGREEMENT

Below, subcontractor is to provide all contracted work references over the last three (3) years.  Please include all companies names (including Toll Bros., Inc.), addresses, phone numbers, points of contact (POCs), type, quantity, location, and date(s) of contracted work performed, and whether you left and/or are currently on good terms.  If more than 4 references continue on separate pages.

| Company Name, POC, & Phone No. | Address | Type/Quantity of Work, & Work Location/Date(s) | Left/Currently on Good Terms? Yes/*No (*If "No" list problem) |
|---|---|---|---|
| Toll Bros. | Hockessin Chase | HVAC | Yes |
| Toll Bros | Garnett Valley Woods | | Yes |
| Toll Brothers, Inc. | Hockessin Valley Falls | | Yes |
| Toll Brothers, Inc. | Tall Trees | | yes |

I warrant the above information to be true, accurate, and correct to the best of my knowledge.

Subcontractor's Signature: _____ 8/18/04

TB 00050

E:\Contracts\SUB PAYMENT SPEC.doc
EFFECTIVE DATE: 2/01/03

PROJECT: *Brandywine Hunt*

C.C. #4451, #4452, #4453, #4454

**EFFECTIVE DATE: 05/01/04**

Page 1 of 1

## EXHIBIT "C"

## ADDITIONAL WORK PRICE LIST

NOTE:    All work other than as contracted on the "Exhibit B Payment Schedule" must be pre-authorized through the issuance of a Toll Bros., Inc. "Field Work Order". Invoices for additional work must have the pre-authorized Field Work Order attached.

**DESCRIPTION**

**COST**

MECHANIC

$ 85 /HR

HELPER

$ 40 /HR

TB 00051

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROBERT P. KEMPSKI,                              :
                                                :
      Plaintiff,                            :
                                                :
TOLL BROS., INC, a corporation of the           :       C.A. No.: 06-252-KAJ
Commonwealth of Pennsylvania, <u>JD</u>         :
<u>FRAMING CONTRACTORS, INC.</u>, a             :
corporation of the State of New Jersey,         :
TBS CONSTRUCTION, INC., a                       :
corporation of the State of New Jersey,         :
                                                :
_____        :
TOLL BROS, INC., a corporation of the           :
Commonwealth of Pennsylvania,                   :
                                                :
          Third Party Plaintiff,      :
                                                :
      v.                                :
                                                :
DELAWARE HEATING AND AIR                        :
CONDITIONING SERVICES, INC., a                  :
corporation of the State of Delaware,           :
JD FRAMING CONTRACTORS, INC., a                 :
corporation of the State of New Jersey,         :
                                                :
          Third Party Defendants.     :

## <u>AMENDED COMPLAINT</u>

    1.    Plaintiff is a resident of the State of Delaware, residing at 818 Woodlawn

Avenue, Apartment C3, Wilmington, Delaware 19806.

    2.    Defendant Toll Bros., Inc., is a corporation of the Commonwealth of

Pennsylvania.  Its registered agent for service of process is The Corporation Trust Company,

Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

3.    Defendant JD Framing Contractors, Inc., is a corporation of the State of New Jersey, authorized to do business in the State of Delaware. Its principal place of business is located at 200 Delores Drive, Cinnaminson, New Jersey 08077.

4.    Defendant TBS Construction, Inc., is a corporation of the State of New Jersey, authorized to do business in the State of Delaware. Its principal place of business is located at 3001 Route 130 South, Apartment #61-B, Delran, New Jersey 08075.

5.    Upon information and belief, at all times pertinent hereto, defendant Toll Bros., Inc. was the owner, possessor, operator, franchisor, franchisee, lessor and/or lessee of the property located at Brandywine Hunt, Naamans Road, Wilmington, Delaware.

6.    Upon information and belief, at all times pertinent hereto, defendant Toll Bros., Inc. contracted with defendant JD Framing Contractors, Inc., to perform construction work on the property in question.

7.    Upon information and belief, at all times pertinent hereto, defendant JD Framing Contractors, Inc. subcontracted with defendant TBS Construction, Inc., to perform construction work on the property in question, including but not limited to building, assembling, and/or constructing framing on the house on the property in question.

8.    On or about August 25, 2005, at approximately 12:00 p.m., plaintiff Robert P. Kempski was lawfully working as a heating and air conditioning installer for Delaware Heating and Air Conditioning within a stick structure of a new home located at Lot 87 of the Brandywine Hunt home construction site where defendants were performing construction activities. At all times pertinent hereto, plaintiff was a worker, invitee, business visitor and/or person lawfully on the aforementioned premises. Plaintiff was installing duct work in the attic of the home when

suddenly and without warning, the floor board on which he was standing gave way, causing him to fall from the attic to the first floor level of the home.

9.    As a direct and proximate result of the aforementioned incident, plaintiff suffered severe bodily injuries, including, but not limited to, injuries to his head, shoulders, arms, and hands.  Some or all of his injuries have continued since the accident and are permanent in nature.

10.    As a further consequence of his injuries, plaintiff has incurred in the past and will continue to incur in the future, medical and medication expenses for the treatment of his injuries.

11.    As a further consequence of his injuries, plaintiff has experienced in the past and will continue to experience in the future, considerable pain, suffering, discomfort, anxiety and anguish, both mental and physical in nature.

12.    As a further consequence of his injuries, plaintiff has incurred in the past and will continue to incur in the future a loss of earnings and a permanent loss of earning capacity.

13.    Defendants, working on and in control of the premises and area in question, owed a duty to the employees, workers, invitees, business visitors and/or persons lawfully on the premises, including plaintiff, to maintain the property in a reasonable and safe condition, free of defects and hazards which would render it unsafe for persons lawfully on the premises.  Defendants breached that duty.

14.    The incident and the plaintiff's resulting injuries and damages were proximately caused by the negligence of defendants in that it, through their agents, servants and/or employees:

(a)    failed to properly inspect the construction area to insure that it was safe to work in when they knew or in the exercise of reasonable care should have known that plaintiff and other workers like him intended to work in the area in question;

(b)    failed to properly secure the floor board or see that it was secured when they knew or should have known that the plaintiff and other workers like him intended to work in the area in question;

(c)    failed to employ appropriate safety techniques in setting up the work and allowing it to take place in the construction area when they knew or should have known that plaintiff and other workers like him intended to work in the area in question;

(d)    required and/or permitted their employees, agents, contractors, and/or subcontractors to work in improper, unsafe, and dangerous construction conditions when defendants knew or should have known of the likelihood that employees, workers, invitees, business visitors and/or persons lawfully on the premises would be injured by the condition of the area in question and when defendants had a right to control the actions of its employees, workers, invitees, business visitors and/or persons lawfully on the premises;

(e)    required and/or permitted their employees, agents, contractors and/or subcontractors to fail to comply with appropriate safety regulations and procedures when defendants had the right to control the actions of their employees, workers, invitees, business visitors and/or persons lawfully on the premises;

(f)    did not observe the failure of their employees, agents, contractors, and/or subcontractors to use proper and safe materials when defendants knew, or in the exercise of reasonable care, should have discovered and should have realized that the condition of the area in question involved an unreasonable risk of harm to the persons lawfully on the premises and should

have expected that these individuals would not discover or realize the danger or would fail to protect themselves against the danger when defendants had the right to control the actions of their employees, agents, contractors and/or subcontractors;

(g)      did not observe the failure of their employees, agents, contractors and/or subcontractors to comply with appropriate safety regulations and procedures when defendants had the right to control the actions of their employees, agents, contractors and/or subcontractors;

(h)      did not prevent the failure of their employees, agents, contractors and/or subcontractors from working in improper, unsafe, and dangerous construction conditions when defendants had the right to control the actions of their employees, workers, invitees, business visitors and/or persons lawfully on the premises;

(i)      did not prevent the failure of their employees, agents, contractors and/or subcontractors to comply with appropriate safety regulations and procedures when defendants had a right to control the actions of their employees, agents, contractors and/or subcontractors;

(j)      permitted improperly attached floor boards to remain in the home construction site on Lot 87 of Brandywine Hunt thereby creating a dangerous, defective and hazardous condition;

(k)      failed to properly and adequately notify their employees, agents, contractors and/or subcontractors that the floor boards had not been properly and adequately installed in the construction area in question;

(l)      failed to adequately warn or otherwise inform their employees, agents, contractors and/or subcontractors that the improperly installed floor boards posed a dangerous and unsafe condition, having actual or constructive knowledge thereof;

(m)    failed to exercise reasonable care to protect plaintiff, by inspection and other affirmative acts, from the danger of reasonably foreseeable injury occurring from reasonably foreseeable uses of the area in question;

(n)    carelessly performed their contractual duties by causing the improper installation of the  floor boards of the Lot 87 home construction project, thereby causing a dangerous, defective, and hazardous condition within the house;

(o)    failed to properly train, supervise or hire sufficient personnel to properly inspect, maintain, construct, and/or alter, the assembly of floor boards  and/or other equipment in the area in question so as to maintain the work area in a condition free of defects and reasonably safe for use by individuals, such as plaintiff;

(p)    utilized improper materials and equipment during the assembly, construction, and/or installation of floor boards and/or other materials so as to cause or increase the risk that it would be unstable and/or break; and,

(q)    failed to use due care to provide plaintiff with a safe working environment.

15.    Defendants knew or should have known at the time of the aforementioned incident that the work which was to be done and/or performed normally and inherently involved special dangers to others including the employees of Delaware Heating and Air Conditioning one of whom was plaintiff, unless reasonable precautions were taken against such dangers.  Defendants were negligent in failing to take such reasonable precautions.  Their negligence was the proximate cause of plaintiff's injuries and damages

16.    The aforementioned negligence of the defendants also constituted negligence per se, said negligence constituting non-compliance on the part of the defendants with pertinent safety and construction statutes, regulations and procedures.

17.    Defendants are also responsible for plaintiff's damages under the doctrine of <u>Res</u> <u>Ipsa</u> <u>Loquitur</u>.

WHEREFORE, plaintiff demands judgment against defendants for his special and general damages, including pain and suffering, the costs of this action plus pre and post judgment interest and other such relief as the Court finds just.


         <u>/s/ Joseph J. Rhoades</u>
         Joseph J. Rhoades, Esquire (ID No. 2064)
         A. Dale Bowers, Esquire (ID No. 3932)
         1225 King Street, 12 Flr.
         Wilmington, Delaware 19801
         302-427-9500
         Attorneys for Plaintiff(s)

DATE: October 18, 2006

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT P. KEMPSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-252 KAJ |
| | ) | |
| TOLL BROS., INC., a corporation of | ) | |
| the Commonwealth of Pennsylvania, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| TOLL BROS., INC., a corporation of | ) | |
| the Commonwealth of Pennsylvania, | ) | |
| | ) | |
| Third Party Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE HEATING AND AIR | ) | |
| CONDITIONING SERVICES, INC., a corporation | ) | |
| of the State of Delaware, and | ) | |
| JD FRAMING CONTRACTORS, INC., a | ) | |
| corporation of the State of New Jersey, | ) | |
| | ) | |
| Third Party Defendants | ) | |

## THIRD PARTY COMPLAINT

COMES NOW, Defendant/Third-Party Plaintiff, by and through its undersigned

attorneys and pursuant to Fed. R. Civ. P. 4 and 14, files this Third Party Complaint against

Delaware Heating and Air Conditioning Services, Inc., and JD Framing Contractors, Inc.,

alleging as follows:

1

The Parties

    1.     Plaintiff Robert P. Kempski ("Kempski") is an adult resident of the State of Delaware and resides at 818 Woodlawn Avenue, Apartment C3, Wilmington, Delaware.

    2.     Defendant/Third Party Plaintiff Toll Bros., Inc. ("TBI") is a Pennsylvania corporation with its principal place of business in Horsham, Pennsylvania.

    3.     Third Party Defendant Delaware Heating and Air Conditioning Services, Inc. ("DHAC") is a Delaware corporation that may be served through its registered agent Corporate Agents, Inc., 2711 Centerville Road, Suite 400, Wilmington, Delaware. DHAC lawfully conducts business in the State of Delaware.

    4.     Third Party Defendant JD Framing Contractors, Inc. ("JD Framing") is a New Jersey corporation that may be served at its principal place of business located at 200 Delores Drive, Cinnaminson, New Jersey. JD Framing lawfully conducts business in the State of Delaware.

Venue and Jurisdiction

    5.     Venue is proper in this Court as the incident giving rise to this lawsuit took place in Wilmington, Delaware, which is located in this judicial district.

    6.     Jurisdiction over the initial Complaint is proper under 28 U.S.C. § 1441(a). This Court has supplemental jurisdiction over this Third Party Complaint under 28 U.S.C. § 1367(a).

The Contracts

    7.     TBI lawfully conducts business in Delaware.

    8.     One of TBI's business projects was developing a subdivision in Wilmington, Delaware (the "Development").

9.    DHAC entered into a contract with TBI (the "DHAC Contract") to perform work on the Development as a contractor. (Relevant portions of DHAC Contract attached hereto as Exhibit A).

10.    The DHAC Contract required DHAC to defend and indemnify TBI for any claims related to DHAC's work.

11.    The DHAC Contract required DHAC to procure liability insurance designating TBI as a named insured and beneficiary of the policy, to cover TBI for any claims associated with work performed under the DHAC Contract.

12.    In compliance with the DHAC Contract, DHAC procured liability insurance with Penn National Insurance Company (the "Penn National Policy").

13.    JD Framing entered into a contract with TBI (the "JD Framing Contract") to perform work on the Development as a contractor. (Relevant portions of JD Framing Contract attached hereto as Exhibit B).

14.    The JD Framing Contract required JD Framing to defend and indemnify TBI for any claims related to JD Framing's work.

15.    The JD Framing Contract required JD Framing to procure liability insurance designating TBI as a named insured and beneficiary of the policy, to cover TBI for any claims associated with work performed under the JD Framing Contract.

16.    Pursuant to the JD Framing Contract, JD Framing submitted an insurance certificate to TBI evidencing coverage from Sirius America Insurance Company.

The Alleged Accident

17.    Upon information and belief, Kempski was an employee of DHAC at all relevant times.

18.    Kempski allegedly fell from a floorboard while working in a certain house (the "House") in the Development (the "Alleged Accident").

19.    Kempski has filed a Complaint (Exhibit C) that seeks to hold TBI liable for the Alleged Accident on theories of negligence and premises liability.

20.    Kempski has sought damages and compensation for the injuries sustained in the Alleged Accident from TBI.

21.    TBI has filed an Answer to the Complaint denying liability to Kempski in any manner.

The Dispute

22.    TBI did not control the House at the time of the Alleged Accident. Instead, the House was controlled by whatever contractor was in charge of it at the time.

23.    DHAC was the contractor in charge of HVAC work in the House.

24.    TBI had no duty to control DHAC's worksite or employees. Instead, DHAC, as an independent contractor, was solely responsible for the work of its employees, including their safety.

25.    The DHAC Contract required DHAC to procure insurance listing TBI as a named additional insured for losses related to work under the DHAC Contract.

26.    The DHAC Contract requires DHAC to defend and indemnify TBI.

27.    The House was in "frame" condition at the time of the Alleged Accident.

28.    JD Framing was the contractor in charge of framing the House.

29.    TBI had no duty to control JD Framing's worksite or employees. Instead, JD Framing, as an independent contractor, was solely responsible for the work of its employees, including liability to third parties for claims related to that work.

4

30.    The JD Framing Contract required JD Framing to procure insurance listing TBI as a named additional insured for losses related to work under the JD Framing Contract.

31.    The JD Framing Contract requires JD Framing to defend and indemnify TBI.

<u>Count I – Negligence (Indemnification/Contribution)</u>

<u>Against DHAC</u>

32.    TBI incorporates by reference all preceding allegations of this Third Party Complaint.

33.    TBI denies all liability for the Alleged Accident.  If, however, liability is imposed on TBI as a result of the matters alleged in the Complaint, TBI makes the following claim for indemnification and/or contribution.

34.    DHAC, and not TBI, was responsible for the work and safety of its employees, including Kempski.

35.    TBI denies all liability for the Alleged Accident, but to the extent that TBI may be found liable, DHAC was negligent by, *inter alia*:

      a.    Failing to properly supervise its employees;

      b.    Failing to properly train its employees;

      c.    Failing to properly inspect the work area of its employees;

      d.    Failing to properly secure the allegedly loose floor board;

      e.    Failing to implement proper safety procedures for work of the type at issue;

      f.    Failing to observe its employees performing work in an unsafe manner;

      g.    Failing to adequately warn its employees of the dangers associated with their work;

h.      Failing to use proper materials;

i.      Failing to comply with applicable statutes, regulations, and ordinances regarding worker safety;

j.      Failing to use due care to prevent foreseeable injury to its employees.

36.    TBI is entitled to indemnification and/or contribution from DHAC to whatever extent DHAC is found to have proximately caused Kempski's alleged injuries.

<u>Count II – Negligence (Indemnification/Contribution)</u>

<u>Against JD Framing</u>

37.    TBI incorporates by reference all preceding allegations of this Third Party Complaint.

38.    TBI denies all liability for the Alleged Accident. If, however, liability is imposed on TBI as a result of the matters alleged in the Complaint, TBI makes the following claim for indemnification and/or contribution.

39.    JD Framing, and not TBI, was responsible for the work of its employees, including liability to third parties for claims related to that work.

40.    JD Framing, and not TBI, was responsible for passing the House to the next contractor in a safe condition after JD Framing finished its work.

41.    TBI denies all liability for the Alleged Accident, but to the extent that TBI may be found liable, JD Framing was negligent by, *inter alia*:

a.      Failing to pass the House to the next subcontractor in a reasonably safe condition;

b.      Failing to properly supervise its employees;

c.      Failing to properly train its employees;

6

d.    Failing to properly inspect the work of its employees;

e.    Failing to properly secure the allegedly loose floor board;

f.    Failing to implement proper safety procedures for work of the type at issue;

g.    Failing to observe its employees performing work in an unsafe manner;

h.    Failing to use proper materials;

i.    Failing to warn of a dangerous condition when it had a duty to do so;

j.    Failing to comply with applicable statutes, regulations, and ordinances regarding worker safety;

k.    Failing to use due care to prevent foreseeable injury to third parties from the work of its employees.

42.    TBI is entitled to indemnification and/or contribution from JD Framing to whatever extent JD Framing is found to have proximately caused Kempski's alleged injuries.

<u>Count III – Premises Liability (Indemnification/Contribution)</u>

<u>Against DHAC</u>

43.    TBI incorporates by reference all preceding allegations of this Third Party Complaint.

44.    TBI denies all liability for the Alleged Accident. If, however, liability is imposed on TBI as a result of the matters alleged in the Complaint, TBI makes the following claim for indemnification and/or contribution.

45.    DHAC, and not TBI, was responsible for maintaining a reasonably safe work area for its employees.

46.    DHAC, and not TBI, controlled the worksite of its employees – the premises at issue.

47.    TBI is entitled to indemnification and/or contribution to whatever extent DHAC's failure to maintain the premises is found to have proximately caused Kempski's injuries.

<u>Count IV – Premises Liability (Indemnification/Contribution)</u>

<u>Against JD Framing</u>

48.    TBI incorporates by reference all preceding allegations of this Third Party Complaint.

49.    TBI denies all liability for the Alleged Accident. If, however, liability is imposed on TBI as a result of the matters alleged in the Complaint, TBI makes the following claim for indemnification and/or contribution.

50.    JD Framing, and not TBI, was responsible for maintaining its work area in a reasonably safe condition.

51.    JD Framing, and not TBI, was responsible for passing the House to the next subcontractor in a reasonably safe condition at the completion of JD Framing's work.

52.    JD Framing, and not TBI, controlled the premises at issue because it was still working on the House or had so recently passed the premises to the next subcontractor, DHAC, that it remained responsible for any dangerous condition that it had created.

53.    TBI is entitled to indemnity and/or contribution to whatever extent JD Framing's failure to maintain the premises is found to have proximately caused Kempski's injuries.

Count V -- Breach of Contract

Against DHAC

54.    TBI incorporates by reference all preceding allegations of this Third Party

Complaint.

55.    TBI denies all liability for the Alleged Accident. If, however, liability is imposed

on TBI as a result of the matters alleged in the Complaint, TBI makes the following claim for

breach of contract.

56.    Article 3 of the DHAC Contract states,

INDEMNIFICATION: The Contractor [DHAC] shall indemnify, defend
and hold harmless [TBI] and all of its agents and employees from and
against all claims, damages, losses and expenses including attorneys' fees
in any way arising out of or resulting from the performance, existence or
condition of the Work under the Contract Documents, whether or not such
claim, damage, loss or expense is based in whole or in part upon any
negligent act or omission of [TBI] or [TBI]'s participation in the Work or
upon any statutory duty or obligation. [DHAC] expressly acknowledges
that the parties are contractually allocating these risks to [DHAC] and
[DHAC] has procured and shall maintain for the term of this Agreement
the insurance polices ... for the purpose of providing a financial means to
support this indemnification provision. In addition, in any and all claims
against [TBI] or any of its agents or employees by any employee of
[DHAC] or anyone for whose acts [DHAC] may be liable, the
indemnification obligation under this paragraph shall not be limited in any
way by any limitations on the amount or type of damages, compensation
or benefits payable by or for [DHAC] under workers' compensation acts,
disability benefit acts or other employee benefit acts. ... [DHAC], at its
own cost and expense, shall indemnify and defend [TBI] against such
action, suit or proceeding and take such steps as are necessary to prevent
the entry of judgment or award against [TBI] and to satisfy such judgment
or award if entered.

57.    Article 4 of the DHAC Contract required DHAC to procure insurance for its work

on the Development that "shall name Toll Brothers, Inc., its subsidiaries and affiliates as

'Additional Insured' parties for work performed by [DHAC] . . . ."

58.    Article 6 of the DHAC Contract states,

9

ADDITIONAL OBLIGATIONS OF CONTRACTOR: [DHAC] shall (a) provide and supply, in the performance of the Work, a sufficiency of properly skilled and other workmen and an adequacy of materials, tools and equipment to prosecute vigorously the performance of the Work, (b) provide a foreman or superintendent satisfactory to [TBI] to supervise the performance of the Work, . . . (d) comply with all statutes, ordinances, rules and regulations of the federal, state and/or local governmental body or agency with jurisdiction over the Work and pay all applicable fees for licenses or permits required in connection with the performance of the Work, (e) abide by all safety rules and regulations established by [TBI] or promulgated by any governmental body or agent with jurisdiction over the Work . . . .

59.    Article 8 of the DHAC Contract states,

OTHER ITEMS: [DHAC] represents that prior to submitting its proposal, [DHAC] carefully examined all of the contract documents; acquainted itself with the Project site and all other conditions relevant to the Work; and made all investigations essential to full understanding of the difficulties which might be encountered in performing the Work.

60.    Article 12 of the DHAC Contract states,

SAFETY PRECAUTIONS/EEO COMPLIANCE: [DHAC] has agreed to comply with and has full knowledge of the latest revised Occupation Safety and Health Act (OSHA) and all related regulations and will work in accordance with the requirements therein contained regarding the safety precautions to be taken on all construction projects. All applicable sections of the latest approved OSHA requirements and any and all amendments shall be observed in this project.

61.    The DHAC Contract contractually allocates the duty of providing a safe workplace for DHAC employees to DHAC.

62.    The DHAC Contract creates an absolute duty for DHAC to defend and indemnify TBI for the claims Kempski has made against TBI.

63.    DHAC has breached the DHAC Contract by failing to defend and indemnify TBI from Kempski's suit.

64.     TBI denies all liability for the Alleged Accident, but to the extent that TBI may be found liable, then DHAC has breached the DHAC Contract by negligently causing Kempski's alleged injuries.

65.     TBI has been damaged by the aforesaid breaches in an amount to be determined at trial.

Count VI – Breach of Contract

Against JD Framing

66.     TBI incorporates by reference all preceding allegations of this Third Party Complaint.

67.     TBI denies all liability for the Alleged Accident. If, however, liability is imposed on TBI as a result of the matters alleged in the Complaint, TBI makes the following claim for breach of contract.

68.     Article 3 of the JD Framing Contract states,

> INDEMNIFICATION: [JD Framing] shall indemnify, defend and hold harmless [TBI] and all of its agents and employees from and against all claims, damages, losses and expenses including attorneys' fees in any way arising out of or resulting from the performance, existence or condition of the Work under the Contract Documents, whether or not such claim, damage, loss or expense is based in whole or in part upon any negligent act or omission of [TBI] or [TBI]'s participation in the Work or upon any statutory duty or obligation. [JD Framing] expressly acknowledges that the parties are contractually allocating these risks to [JD Framing] and [JD Framing] has procured and shall maintain for the term of this Agreement the insurance polices ... for the purpose of providing a financial means to support this indemnification provision. In addition, in any and all claims against [TBI] or any of its agents or employees by any employee of [JD Framing] or anyone for whose acts [JD Framing] may be liable, the indemnification obligation under this paragraph shall not be limited in any way by any limitations on the amount or type of damages, compensation or benefits payable by or for [JD Framing] under workers' compensation acts, disability benefit acts or other employee benefit acts. . . . [JD Framing], at its own cost and expense, shall indemnify and defend [TBI] against such action, suit or proceeding and take such steps as are necessary

to prevent the entry of judgment or award against [TBI] and to satisfy such judgment or award if entered.

69.     Article 4 of the JD Framing Contract required JD Framing to procure insurance for its work on the Development that "shall name Toll Brothers, Inc., its subsidiaries and affiliates as 'Additional Insured' parties for work performed by [JD Framing] . . . . "

70.     Article 6 of the JD Framing Contract states,

ADDITIONAL OBLIGATIONS OF CONTRACTOR: [JD Framing] shall (a) provide and supply, in the performance of the Work, a sufficiency of properly skilled and other workmen and an adequacy of materials, tools and equipment to prosecute vigorously the performance of the Work, (b) provide a foreman or superintendent satisfactory to [TBI] to supervise the performance of the Work, . . . (d) comply with all statutes, ordinances, rules and regulations of the federal, state and/or local governmental body or agency with jurisdiction over the Work and pay all applicable fees for licenses or permits required in connection with the performance of the Work, (e) abide by all safety rules and regulations established by [TBI] or promulgated by any governmental body or agent with jurisdiction over the Work . . . .

71.     Article 8 of the JD Framing Contract states,

OTHER ITEMS: [JD Framing] represents that prior to submitting its proposal, [JD Framing] carefully examined all of the contract documents; acquainted itself with the Project site and all other conditions relevant to the Work; and made all investigations essential to full understanding of the difficulties which might be encountered in performing the Work.

72.     Article 12 of the JD Framing Contract states,

SAFETY PRECAUTIONS/EEO COMPLIANCE: [JD Framing] has agreed to comply with and has full knowledge of the latest revised Occupation Safety and Health Act (OSHA) and all related regulations and will work in accordance with the requirements therein contained regarding the safety precautions to be taken on all construction projects. All applicable sections of the latest approved OSHA requirements and any and all amendments shall be observed in this project.

73.     The JD Framing Contract allocates the duty of maintaining a safe workplace, and passing a safe workplace to the next subcontractor, to JD Framing.

74.    The JD Framing Contract creates an absolute duty for JD Framing to defend and indemnify TBI for the claims Kempski has made against TBI.

75.    The JD Framing Contract creates an absolute duty for JD Framing to procure insurance naming TBI as an additional insured and beneficiary for losses of the type alleged by Kempski.

76.    JD Framing has breached the JD Framing Contract by failing to defend and indemnify TBI from Kempski's suit.

77.    TBI denies all liability for the Alleged Accident, but to the extent that TBI may be found liable, JD Framing has breached the JD Framing Contract by conducting its work in such a manner as to cause Kempski's alleged injuries.

78.    JD Framing has breached the JD Framing Contract by failing to ensure that TBI was named an additional insured on its insurance policy.

79.    TBI has been damaged by the aforesaid breaches in an amount to be determined at trial.

Count VII – Declaratory Judgment

Against DHAC

80.    TBI incorporates by reference all preceding allegations of this Third Party Complaint.

81.    TBI denies all liability for the Alleged Accident. If, however, liability is imposed on TBI as a result of the matters alleged in the Complaint, TBI makes the following claim for declaratory judgment.

82.    Pursuant to the DHAC Contract, DHAC must defend and indemnify TBI both for its costs of defending this matter and for any judgment that might be entered.

83. DHAC has refused to honor its contractual obligation to defend and indemnify TBI.

84. By reason of the foregoing, an actual and justiciable controversy exists between DHAC and TBI regarding their rights and obligations under the DHAC Contract, and a judicial declaration is necessary to establish TBI's rights and DHAC's duties under the DHAC Contract.

<u>Count VII – Declaratory Judgment</u>

<u>Against JD Framing</u>

85. TBI incorporates by reference all preceding allegations of this Third Party Complaint.

86. TBI denies all liability for the Alleged Accident. If, however, liability is imposed on TBI as a result of the matters alleged in the Complaint, TBI makes the following claim for declaratory judgment.

87. Pursuant to the JD Framing Contract, JD Framing must defend and indemnify TBI both for its costs of defending this matter and for any judgment that might be entered.

88. JD Framing has refused to honor its contractual obligation to defend and indemnify TBI.

89. By reason of the foregoing, an actual and justiciable controversy exists between JD Framing and TBI regarding their rights and obligations under the JD Framing Contract, and a judicial declaration is necessary to establish TBI's rights and JD Framing's duties under the JD Framing Contract.

WHEREFORE, Defendant/Third-Party Plaintiff TBI demands judgment against Third Party Defendants DHAC and JD Framing for a declaration of Third-Party Defendants' duties under the relevant contracts, indemnification, contribution, and breach of contract damages,

including reasonable attorneys fees and all defense costs as specified in the relevant contracts,

plus pre- and post-judgment interest and any other relief the Court deems just and proper.

### McCARTER & ENGLISH, LLP

/s/ Michael P. Kelly

By:_____

Michael P. Kelly (DE Bar ID #2295)
Andrew S. Dupre (DE Bar ID #4621)
919 N. Market Street, St. 1800
Wilmington, DE  19801
(302) 984-6300

Attorneys for Defendant

Dated: May 9, 2006

# EXHIBIT D

# Toll Brothers

## America's Luxury Home Builder™

**KRISTINE MACIOLEK SMALL, ESQUIRE**
**GENERAL COUNSEL'S OFFICE**

Direct Dial: (215) 938-6922
Fax: (215) 938-8255

April 5, 2006

**VIA FAX 877-942-9715**

Linda Stewart
Penn National Insurance Company

> Re:    **Penn National Insurance Company Policy: AC90613137**
> **Insured: Delaware Heating and Air Conditioning**
> **Litigation: Robert Kempski v. Toll Brothers, Inc.**
> **Superior Court of New Castle County, DE**
> **Case No.: 06C-01-145-JEB**

Dear Ms. Stewart:

Although we discussed this matter on a few occasions, I have not received confirmation of coverage. I request again that you provide me a copy of the insurance policy and confirm coverage. We are about to respond to the complaint and will be forced to name Penn National and Delaware Heating and Air Conditioning as defendants if we do not resolve this request favorably and quickly.

Feel free to contact me with any questions or concerns.

Sincerely,

Kristine Maciolek Small

KMS/mty

cc:    Michael P. Kelly (via facsimile)
Frank Bartuski (via facsimile)

New York Stock Exchange • Symbol TOL
Corporate Office: 250 Gibraltar Road, Horsham, PA 19044
(215) 938-8000
tollbrothers.com

# EXHIBIT E

Harrisburg Claims Service Office
P.O. Box 3880
Harrisburg, PA 17105-3880
800.942.9715 Phone
717.230.8200 Phone
800.833.9422 Claims-Mgt Fax
717.221.6062 Claims-Mgt Fax

www.PennNationalInsurance.com



June 20, 2006

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED
AND REGULAR U. S. MAIL**

*ACCEPTANCE LETTER*

Mr. Michael P. Kelly
McCarter & English, LLP
919 N. Market Street, SL 1800
Wilmington, DE 19801

RE:    Robert P. Kempski, Plaintiff v. Toll Bros, Inc., Defendant – Toll Bros, Inc. Third
       Party Plaintiff v. Delaware Heating and Air Conditioning Services, Inc. In The
       United States District Court In And For The District of Delaware

       C.A. No. 06- 252-KAJ

       Insured:      Delaware Heating And Air Conditioning
       Claim No.:    02749592
       Plaintiff:    Robert P. Kempski
       Date of Loss: 8/25/05

Dear Mr. Kelly:

Penn National Insurance acknowledges receipt of the Third Party Complaint on May 19,
2006, in which Toll Bros., Inc. requests defense and indemnification from our insured,
Delaware Heating & Air Conditioning Services, Inc. As explained more thoroughly as
follows, Penn National Insurance will accept the defense and indemnification of Toll
Bros., Inc., but only pursuant to the conditions set forth herein.

As of this date, the information and/or documents in our possession concerning this
matter consist of the following: a letter dated February 9, 2006 sent by Kristina Small; a
copy of the complaint filed against Toll Bros., Inc. captioned Robert Kempski v. Toll
Bros., Inc. We have also received a copy of the Third Party Complaint captioned Toll
Bros., Inc. v. Delaware Heating & Air Conditioning and a copy of the contract between
Toll Bros., Inc. and Delaware Heating & Air Conditioning.

Toll Brothers' tender arises from a contract that required Delaware Heating & Air
Conditioning Services to indemnify and pay Toll Bros., Inc.'s defense costs arising from
losses that occur during the performance of Delaware Heating & Air Conditioning's work
under the contract documents whether or not such claim, damage, loss or expense is
based in whole or in party upon any negligent act or omission of Toll's participation in the
work or upon any statutory duty or obligation.

Penn National understands that this matter involves a claim by Robert Kempski against Toll Bros., Inc. arising out of an accident that occurred at a job site located at Lot 87 of the Brandywine residential development that was under construction and where Delaware Heating & Air Conditioning was performing construction services pursuant to the Contract between Delaware Heating & Air Conditioning and Toll Bros.  At the time of the accident, Mr. Kempski was an employee of Delaware Heating & Air Conditioning. Mr. Kempski was installing duct work in the attic of the home that was under construction when a board he was standing on gave way, causing him to fall from the attic to the first floor level of the home.  Mr. Kempski filed a lawsuit in the Superior Court For The State Of Delaware In and For New Castle County seeking judgment against Toll Bros., Inc. for his damages resulting from the fall.

Toll Bros., Inc. is making a request for defense and indemnification under Delaware Heating & Air Conditioning Services' Commercial General Liability Policy issued by Penn National Insurance pursuant to Policy No. AC9 0613137 for the Policy Period from March 14, 2005 through March 14, 2006.  The Policy provides $1,000,000 liability coverage for "bodily injury" caused by an "occurrence".  In view of the foregoing, Penn National Insurance will afford coverage and provide a defense for this claim upon the condition that Toll Bros., Inc. agrees to dismiss the Third Party Complaint against Delaware Heating & Air Conditioning Services that is captioned above.

Please be advised that David Soldo of the law firm of Reger, Rizzo, and Kavulich & Darnall has been retained by Penn National Insurance to defend Toll Bros., Inc. interests in this matter.  Mr. Soldo may be contacted at 1001, N. Jefferson Street, Suite 202, Wilmington DE 19801; telephone 302-652-3611; Fax 302-652-3620; E-Mail Address: dsoldo@rrkdlaw.com.

Please do not hesitate to contact us or Mr. Soldo in the event either you or your client have any questions or comments regarding this matter.

Sincerely,

PENN NATIONAL INSURANCE

*Linda Stewart/hd*

Linda L. Stewart
Claim Specialist


cc: David Soldo
    Reger, Rizzo, Kavulich & Darnall
    1001 N. Jefferson Street, Suite 202
    Wilmington, DE 19801


    Jonathan Parshall
    Murphy, Spadaro & Landon
    1011 Centre Road, Suite 210
    Wilmington, DE 19805

# EXHIBIT F

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBERT KEMPSKI, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 06-252 KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| TOLL BROS., INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| TOLL BROS., INC. | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE HEATING AND AIR | ) | |
| CONDITIONING SERVICES, INC., and | ) | |
| JD FRAMING CONTRACTORS, INC. | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## ANSWER TO COMPLAINT WITH AFFIRMATIVE DEFENSES AND CROSS CLAIM

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Denied. The allegations contained herein are denied as conclusions of law to which no responsive pleadings are required.

7. Admitted.

8. Admitted.

9. Admitted.

10. It is admitted that the contract contains indemnification language. The contract is

a written    document which speaks for itself and Third Party Plaintiff's characterization thereof is specifically denied.

11.    It is admitted that the contract required EHAC to procure liability insurance. The contract is a written a document which speaks for itself and Third Party Plaintiff's characterization thereof is specifically denied.

12.    Admitted.

13.    Admitted.

14.    The allegations contained herein are directed toward a party other than the answering Defendant and no response is required.

15.    The allegations contained herein are directed toward a party other than the answering Defendant and no response is required.

16.    The allegations contained herein are directed toward a party other than the answering Defendant and no response is required.

17.    Admitted.

18.    Admitted.

19.    Admitted.

20.    Admitted.

21.    Admitted.

22.    Denied. After reasonable investigation, answering Third Party Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained herein and same are deemed denied with strict proof thereof demanded at the time of trial. By way of further answer, the allegations contained herein are denied as conclusions of law to which no responsive pleadings are required.

23.    It is admitted that DHAC entered into a contract to perform HVAC work in the

House.  The remaining allegations contained herein are denied.

24.    Denied.  The allegations contained herein are denied as conclusions of law to which

no responsive pleadings are required.

25.    Admitted.

26.    It is admitted that the contract contains indemnification language.  The contract is

a  written   document  which  speaks  for  itself  and  Third  Party  Plaintiff's

characterization thereof is specifically denied.

27.    Denied. After reasonable investigation, answering Third Party Defendant is without

sufficient knowledge or information to form a belief as to the truth or falsity of the

allegations contained herein and same are deemed denied with strict proof thereof

demanded at the time of trial.

28.    The  allegations  contained  herein  are  directed  toward  a  party  other  than  the

answering Third Party Defendant and no response is required.

29.    The  allegations  contained  herein  are  directed  toward  a  party  other  than  the

answering Third Party Defendant and no response is required.

30.    The  allegations  contained  herein  are  directed  toward  a  party  other  than  the

answering Third Party Defendant and no response is required.

31.    The  allegations  contained  herein  are  directed  toward  a  party  other  than  the

answering Third Party Defendant and no response is required.

## COUNT I

32.    Answering Third Party Defendant incorporates paragraphs 1 through 31 above as

is fully set forth herein.

33.    Denied.  The allegations contained herein are denied as conclusions of law to which

no responsive pleadings are required.

34.    Denied. The allegations contained herein are denied as conclusions of law to which no responsive pleadings are required.

35.    (a)-(j)  Denied. The allegations contained herein are denied as conclusions of law to which no responsive pleadings are required.

36.    Denied. The allegations contained herein are denied as conclusions of law to which no responsive pleadings are required.

## COUNT II

37.    Answering Third Party Defendant incorporates paragraphs 1 through 36 above as is fully set forth herein.

38-42.    The allegations contained herein are directed toward a party other than the answering Third Party Defendant and no response is required.

## COUNT III

43.    Answering Third Party Defendant incorporates paragraphs 1 through 42 above as is fully set forth herein.

44.    Denied. After reasonable investigation, answering Third Party Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained herein and same are deemed denied with strict proof thereof demanded at the time of trial.

45.    Denied. After reasonable investigation, answering Third Party Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained herein and same are deemed denied with strict proof thereof demanded at the time of trial. By way of further answer, the allegations contained herein are denied as conclusions of law to which no responsive pleadings are required.

46.    Denied. After reasonable investigation, answering Third Party Defendant is without

sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained herein and same are deemed denied with strict proof thereof demanded at the time of trial. By way of further answer, the allegations contained herein are denied as conclusions of law to which no responsive pleadings are required.

47.    Denied. After reasonable investigation, answering Third Party Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained herein and same are deemed denied with strict proof thereof demanded at the time of trial. By way of further answer, the allegations contained herein are denied as conclusions of law to which no responsive pleadings are required.

## COUNT IV

48.    Answering Third Party Defendant incorporates paragraphs 1 through 47 above as is fully set forth herein.

49.-53. The allegations contained herein are directed toward a party other than the answering Third Party Defendant and no response is required.

## COUNT V

54.    Answering Third Party Defendant incorporates paragraphs 1 through 53 above as is fully set forth herein.

55.    Denied. The allegations contained herein are denied as conclusions of law to which no responsive pleadings are required.

56.    Admitted.

57.    Admitted.

58.    The contract is a written a document which speaks for itself and Third Party Plaintiff's characterization thereof is specifically denied.

59.    The contract is a written a document which speaks for itself and Third Party
Plaintiff's characterization thereof is specifically denied.

60.    The contract is a written a document which speaks for itself and Third Party
Plaintiff's characterization thereof is specifically denied.

61.    The contract is a written a document which speaks for itself and Third Party
Plaintiff's characterization thereof is specifically denied.

62.    The contract is a written a document which speaks for itself and Third Party
Plaintiff's characterization thereof is specifically denied.

63.    Denied. The allegations contained herein are denied as conclusions of law to which
no responsive pleadings are required.

64.    Denied. The allegations contained herein are denied as conclusions of law to which
no responsive pleadings are required.

65.    Denied. The allegations contained herein are denied as conclusions of law to which
no responsive pleadings are required.

## COUNT VI

66.    Answering Third Party Defendant incorporates paragraphs 1 through 65 above as
is fully set forth herein.

67-79. The allegations contained herein are directed toward a party other than the
answering Third Party Defendant and no response is required.

## COUNT VII

80.    Answering Third Party Defendant incorporates paragraphs 1 through 79 above as
is fully set forth herein.

81.    Denied. The allegations contained herein are denied as conclusions of law to which
no responsive pleadings are required.

82.    Denied. The allegations contained herein are denied as conclusions of law to which
no responsive pleadings are required.

83.    Denied. The allegations contained herein are denied as conclusions of law to which
no responsive pleadings are required.

84.    Denied. The allegations contained herein are denied as conclusions of law to which
no responsive pleadings are required.

### COUNT VIII

85.    Answering Third Party Defendant incorporates paragraphs 1 through 84 above as
is fully set forth herein.

86-89. The allegations contained herein are directed toward a party other than the
answering Third Party Defendant and no response is required.

### FIRST AFFIRMATIVE DEFENSE

90.    Third Party Plaintiff's Complaint fails to state a claim  upon which relief can be
granted.

### SECOND AFFIRMATIVE DEFENSE

91.    Plaintiffs' causes of action are barred in whole or in part by the applicable statue of
limitations.

### AFFIRMATIVE DEFENSE

92.    Plaintiffs' causes of action may be barred in whole or in part by the execution of a
general release.

### THIRD AFFIRMATIVE DEFENSE

93.    Plaintiffs' causes of action are barred in whole or in part by the assumption of a
known risk and/or contributory negligence.

### FOURTH  AFFIRMATIVE DEFENSE

94.    Plaintiffs' causes of action are barred in whole or in part by the provisions of the
Delaware Comparative Negligence Act.

### FIFTH  AFFIRMATIVE DEFENSE

95.     If Plaintiffs sustained the injuries as alleged in their Complaint, which is herein strictly denied, then they were caused by the acts or omissions of entities/individuals over which/whom answering Defendant had no control nor legal duty to control.

### SIXTH  AFFIRMATIVE DEFENSE

96.     At all times material hereto, answering Third Party Defendant acted with due care and proper care under the circumstances.

### SEVENTH AFFIRMATIVE DEFENSE

97.     Plaintiffs have failed to mitigate their damages.

### EIGHTH AFFIRMATIVE DEFENSE

98.     If Plaintiff sustained injuries as alleged in her Complaint, which is herein strictly denied, Plaintiff's injuries were caused by a fellow servant.

### NINETH AFFIRMATIVE DEFENSE

99.     Third Party Plaintiff's claims are precluded in whole or in part by the provisions of Delaware Worker's Compensation Statute.

### TENTH AFFIRMATIVE DEFENSE

100.     Third Party Plaintiff's claims are precluded in whole or in part by the provisions of 6 Del. C. § 2704.

WHEREFORE, Answering Third-Party Defendant Delaware Heating and Air Conditioning requests that judgment be entered it his favor and against all other parties.

### CROSS CLAIM AGAINST DEFENDANT/THIRD-PARTY PLAINTIFF

### JD FRAMING CONTRACTORS, INC

101.     Answering Third-Party Defendant incorporates paragraphs 1-100 above as if fully set forth herein.

102.     The Answering Third- Party Defendant denies that it is liable to the Third-Party Plaintiff in any respect. However, in the event that the answering Defendant is held liable to the

Plaintiff, then it cross-claims against the co-defendant, JD Framing Contractors, Inc., on the grounds that the conduct of Co-defendant, weas the primary cause of the damage sustained by the Plaintiff and that the answering Third-Party Defendant, if liable at all, is only secondarily liable. The answering Third-Party Defendant, Delaware Heating and Air Conditioning, therefore is entitled to indemnification from the Co-defendant.

103.    In the event that the answering Third-Party Defendant is held primarily liable to the Third-Party Plaintiff, then the wrongful acts of the Co-defendant, JD Framing Contractors, Inc., are contributing causes of the damages sustained by the Third-Party Plaintiff and the answering Third-Party Defendant is entitled to contribution in any amount which he may be required to pay to the Third-Party Plaintiff as a result of the Co-defendant, JD Framing Contractors, Inc.'s wrongful acts, based on the relative degrees of fault determined pursuant to the provisions of Delaware's Uniform Contribution Among Tortfeasor's Law, 10 Del. C. § 6308.

WHEREFORE, Answering Third-Party Defendant Delaware Heating and Air Conditioning requests that judgment be entered it his favor and against all other parties.

**REGER RIZZO KAVULICH & DARNALL LLP**
/s/Louis J. Rizzo, Jr., Esquire
Louis J. Rizzo, Jr., Esquire (DE ID# 3374)
1001 Jefferson Plaza, Suite 202
Wilmington, DE 19801
(302) 652-3611
Attorney for Third-Party Defendant, Delaware
Heating and Air Conditioning

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT KEMPSKI, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 06-252 KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| TOLL BROS., INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| TOLL BROS., INC. | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE HEATING AND AIR | ) | |
| CONDITIONING SERVICES, INC., and | ) | |
| JD FRAMING CONTRACTORS, INC. | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

### CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify on this 10th day of October, 2006 that two true and

correct copies of the foregoing Answer to Complaint with Affirmative Defenses have been

served by ECF/PACER upon the following:

Joseph J. Rhoades, Esquire
1225 King Street, Suite 1200
P.O. Box 874
Wilmington, DE 19899-0874

Michael Kelly, Esquire
McCarter & English
919 North Market Street, Suite 1800
P.O. Box 111
Wilmington, DE 19899

Erica Finnegan, Esquire
Cross & Simon LLC
913 N. Market Street, 11th Floor
Wilmington, DE 19899-1380

**REGER RIZZO KAVULICH & DARNALL LLP**
    /s/Louis J. Rizzo, Jr., Esquire
Louis J. Rizzo, Jr., Esquire (DE ID# 3374)
1001 Jefferson Plaza, Suite 202
Wilmington, DE 19801
(302)  652-3611
Attorney for Third-Party Defendant, Delaware
Heating and Air Conditioning

# EXHIBIT G

LexisNexis® *Total Research System*

Switch Client | Preferences | Sign Off | [?] Help

Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | History | 

Service: Get by LEXSEE®
Citation: 1990 del super lexis 206

*1990 Del. Super. LEXIS 206, \**

STANLEY H. KOTOWSKI, et al., Plaintiffs, v. A. C. & S. CO., INC., et al., Defendants

Civil Action No. 86C-JN-50, Asbestos

Superior Court of Delaware, New Castle

1990 Del. Super. LEXIS 206

May 30, 1990, Submitted
June 6, 1990, Decided

**PRIOR HISTORY:** **[\*1]** Admissibility of Evidence of Exposure of Plaintiffs to Products of Employers while in that Employment or while in Employ of Employer who is now Bankrupt.

**DISPOSITION:** Admissibility of Evidence of Exposure of Plaintiffs to Products of Employers while in that Employment or while in Employ of Employer who is now Bankrupt - *Granted in Part; Denied in Part.*

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiffs, victims of asbestos exposure, filed a motion to determine the admissibility of evidence of their exposure to asbestos-containing products manufactured or supplied by defendant manufacturer-employers.

**OVERVIEW:** Plaintiffs brought an action to recover for injuries resulting from their exposure to asbestos-containing products. They sought a determination of whether evidence of their exposure to products that had been manufactured by their employers was admissible. The court decided that this evidence was irrelevant and, therefore, inadmissible. The court noted that Del. Code Ann. tit. 10, ch. 63, provided for the apportionment of damages among joint tortfeasors. That chapter covered only entities jointly and severally liable in tort for the same injury to the same person, the court said. In asbestos litigation, the court noted, liability was a prerequisite to claims that invoked Del. Code Ann. tit. 10, ch. 63. Moreover, the apportionment statute applied only to tortfeasors who stood liable for the tortious conduct. The court found that by virtue of the Delaware Workmen's Compensation Law, the employers were not liable in tort for injuries to the plaintiffs. Therefore, the apportionment statute was not applicable to the employers. Thus, the court concluded that plaintiffs' exposure to the asbestos-containing products of the employers was not relevant to the issue of apportionment.

**OUTCOME:** The court held that evidence of plaintiff's exposure to the asbestos-containing products of manufacturers which were not liable for their tortious conduct, including the manufacturer-employers, was not relevant to the issue of damages apportionment and, therefore, was inadmissible.

**CORE TERMS:** joint tortfeasors, exposure, asbestos-containing, manufacturer, tortfeasor, supplier, apportionment, proximate cause, tortious conduct, immunity, compensation law, injured party, workmen's, affirmative defense, liable in tort, workmen's compensation, generalization, non-released, foreseeable, abolished, relieved, asbestos, products manufactured, non-employer, supplied, diseases

**LEXISNEXIS® HEADNOTES**                                                    ⊖**Hide**

Torts > Business Torts
Workers' Compensation & SSDI > Compensability > Course of Employment > General Overview 🔖
Workers' Compensation & SSDI > Coverage > Actions Against Employers > General Overview 🔖
*HN1*⚓Under Delaware law an employee may not sue his employer for injuries occurring and occupational diseases contracted during the course of and arising out of his employment. More Like This Headnote

Torts > Procedure > Multiple Defendants > Contribution > General Overview 🔖
Torts > Procedure > Multiple Defendants > Joint & Several Liability 🔖
*HN2*⚓The primary objective of Del. Code Ann. tit. 10, ch. 63 is to provide relief from the common law principle which imposed total joint and several liability upon each of several tortfeasors for injuries caused by tortious conduct even though the tortious conduct of others may also have caused those injuries. (This liability was subject to the limitation that the injured party was not entitled to multiple recovery that

would total more than the amount of his damages.) That relief takes several forms. First, as to parties who are defendants in the same suit, the jury is called on to determine percentage of fault of each defendant party. Second, if the injured party has released any joint tortfeasor, the non-released tortfeasors are not relieved of liability, but their liability is reduced by the amount the injured party has received for the release or the amount or proportion provided in the release, Del. Code Ann. tit. 10, § 6304(a); if the release is intended to relieve the released tortfeasor from liability for contribution, the injured party's recovery against the non-released tortfeasors must be reduced to the extent of the pro rata share of the released tortfeasor, Del. Code Ann. tit. 10, § 6304(b).  More Like This Headnote |
*Shepardize: Restrict By Headnote*

Torts > Procedure > Multiple Defendants > Contribution > General Overview 🔎
Torts > Procedure > Multiple Defendants > Joint & Several Liability 🔎
HN3± Del. Code Ann. tit. 10, ch. 63 is directed to the rights, liabilities and the relationship of joint tortfeasors among themselves and with those who have suffered injury by virtue of tortious conduct. Del. Code Ann. tit. 10, § 6301 defines joint tortfeasors as persons jointly or severally liable in tort for the same injury to person or property. Del. Code Ann. tit. 10, § 6301, a part of the Uniform Joint Tortfeasor's Contribution Act, requires that in order to enforce contribution, joint tortfeasors must be liable to the same person asserting the claim.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Torts > Procedure > Multiple Defendants > Joint & Several Liability 🔎
HN4± In the field of asbestos litigation, liability to suit is a prerequisite to claims invoking Del. Code Ann. tit. 10, ch. 63.  More Like This Headnote

Torts > Negligence > Causation > General Overview 🔎
Torts > Procedure > Multiple Defendants > Joint & Several Liability 🔎
Workers' Compensation & SSDI > Compensability > Injuries > General Overview 🔎
HN5± The provisions of Del. Code Ann. tit. 10, ch. 63 apply only to tortfeasors who stand liable for tortious conduct which causes the injury. Thus, in applying Del. Code Ann. tit. 10, ch. 63 and in making the apportionment under Del. Code Ann. tit. 10, § 6304 only those tortfeasors which qualify as joint tortfeasors under Del. Code Ann. tit. 10, § 6302 are to be considered. By virtue of the Delaware Workmen's Compensation Law, an employer is not liable in tort for injury to his employee. Therefore, the apportionment permitted under Del. Code Ann. tit.10, ch. 63 is not applicable to a plaintiff's employer. Del. Code Ann. tit. 10, ch. 63 does not modify the standard of liability of a tortfeasor or the proximate cause standard which determines liability of parties for their tortious conduct. It merely determines the sharing of liability among joint tortfeasors including injured parties who have provided releases to joint tortfeasors. It does not provide for reducing the recovery against litigating tortfeasors by virtue of considerations attributable to tortfeasors who do not fall within the definition of joint tortfeasors in Del. Code Ann. tit. 10, § 6302.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Governments > Courts > Common Law 🔎
Workers' Compensation & SSDI > Coverage > Actions Against Employers > General Overview 🔎
HN6± The Delaware Workmen's Compensation Law created a new system for compensating injuries that occur in the workplace. It abolished common law rights relating to that subject. Only remedies that are provided by that law can be asserted. Because the common law remedy which existed in the field has been abolished and preempted by that law, a claim against an employer based on injury to an employee cannot be entertained by the court.  More Like This Headnote

Criminal Law & Procedure > Double Jeopardy > Res Judicata 🔎
Torts > Negligence > Defenses > Assumption of Risk > Elements & Nature > General Overview 🔎
Torts > Negligence > Defenses > Contributory Negligence > General Overview 🔎
HN7± Del. Super. Ct. R. Civ. P. 8(c) mandates assertion of an affirmative defense to assert affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. The Workmen's Compensation Law is not within the specific portion of Rule 8(c). However, this is not a subject that was required to be raised as an assertion of affirmative defense by any party.  More Like This Headnote

Torts > Procedure > Multiple Defendants > Distinct & Divisible Harms 🔎
HN8± Apportionment is a form of relief which must be asserted by individual defendants against individual third party defendant joint tortfeasors or against plaintiffs who have released joint tortfeasors. The burden is upon each defendant to prove its right to that apportionment.  More Like This Headnote

Civil Procedure > Trials > Jury Trials > Jury Instructions > General Overview 🔎
Environmental Law > Hazardous Wastes & Toxic Substances > Asbestos > General Overview 🔎
Workers' Compensation & SSDI > Remedies Under Other Laws > Exclusivity > General Overview 🔎

HN9 Exposure to a harmful substance when not employed by that manufacturer or supplier is not immune by virtue of the workmen's compensation law, and liability for that portion of a plaintiff's exposure is tested by the same standards which apply to non-employer manufacturers and suppliers. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview
HN10 Bankruptcy generally bars litigation other than that heard by that court and it provides its own standards of relief for claimants. More Like This Headnote

**COUNSEL:** David Palmer, Esquire, (argued), Baltimore, Maryland, and Kathleen D. Hadley, Esquire, Wilmington, Delaware, of Law Offices of Peter G. Angelos, attorneys for plaintiffs.

James J. Maron, Esquire, of McCarter & English, Wilmington, Delaware, attorney for defendant The Celotex Corporation.

Joseph Maguire, Esquire, (argued), Philadelphia, Pennsylvania and Clark W. Furlow, Esquire, Wilmington, Delaware, of Lassen, Smith, Katzenstein & Furlow, attorneys for defendant Owens-Corning Fiberglass.

**JUDGES:** Clarence W. Taylor, Judge.

**OPINION BY:** TAYLOR

**OPINION**

ORDER

This 6th day of June, 1990.

The issue is the admissibility of evidence of plaintiffs' exposure to asbestos-containing products manufactured or supplied by those who were employers of plaintiffs.

HN1 Under Delaware law an employee may not sue his employer for injuries occurring and occupational diseases contracted during [*2] the course of and arising out of his employment. This immunity from suit protects the employer from suit by non-employers who may be liable to the employee for those injuries and diseases.

One issue here is whether a plaintiff's exposure to the product of his employer-manufacturer while in that employment can be admitted. Further, whether his exposure to the product of that same manufacturer when the plaintiff was not in that employment can be admitted.

There are two potential purposes for introducing that evidence. One is to seek the benefits accorded by 10 Del. C. Ch. 63 to joint tortfeasors. The other is to aid the jury in determining the proximate cause or each of the proximate causes of a plaintiff's asbestos-related condition.

I shall address the joint tortfeasor issue first. HN2 The primary objective of 10 Del. C. Ch. 63 is to provide relief from the common law principle which imposed total joint and several liability upon each of several tortfeasors for injuries caused by tortious conduct even though the tortious conduct of others may also have caused those injuries. (This liability was subject to the limitation that the injured party was not entitled to multiple recovery [*3] which would total more than the amount of his damages.) For purposes of this case that relief takes several forms. First, as to parties who are defendants in the same suit, the jury is called on to determine percentage of fault of each defendant party. Second, if the injured party has released any joint tortfeasor, the non-released tortfeasors are not relieved of liability, but their liability is reduced by the amount the injured party has received for the release or the amount or proportion provided in the release, 10 Del. C. § 6304(a); if the release is intended to relieve the released tortfeasor from liability for contribution, the injured party's recovery against the non-released tortfeasors must be reduced to the extent of the pro rata share of the released tortfeasor, 10 Del. C. 6304(b).

HN3 10 Del. C. Ch. 63 is directed to the rights, liabilities and the relationship of joint tortfeasors among themselves and with those who have suffered injury by virtue of tortious conduct. 10 Del. C. § 6301 defines joint tortfeasors as "persons jointly or severally liable in tort for the same injury to person or property . . ." The Delaware Supreme Court in Diamond State Tel. [*4] Co. v. University of Delaware, Del. Supr., 269 A.2d 52 (1970) emphasized this scope of the law in the following language, at page 55:

Initially, it may be observed, as the court below held, that University may not seek contribution from Diamond [employer] as a joint tortfeasor. This comes about by reason of 10 Del. C. § 6301, a part of the Uniform Joint Tortfeasor's Contribution Act, which requires that in order to enforce contribution, joint tortfeasors must be liable to the same person asserting the claim.

HN4 In the field of asbestos litigation, this Court in Farrall v. Armstrong Cork Co., Del. Super., 457 A.2d 763 (1983) noted that liability to suit is a prerequisite to claims invoking 10 Del. C. Ch. 63.

HN5 The provisions of 10 Del. C. Ch. 63 apply only to tortfeasors who stand liable for tortious conduct which causes the injury. Thus, in applying 10 Del. C. Ch. 63 and in making the apportionment under 10 Del. C. § 6304 only those tortfeasors which qualify as joint tortfeasors under 10 Del. C. § 6302 are to be considered. By virtue of the Delaware Workmen's Compensation Law, an employer is not liable in tort for injury to his employee. Therefore, the **[*5]** apportionment permitted under 10 Del. C. Ch. 63 is not applicable to a plaintiff's employer.

It should be noted that the 10 Del. C. Ch. 63 does not modify the standard of liability of a tortfeasor or the proximate cause standard which determines liability of parties for their tortious conduct. It merely determines the sharing of liability among joint tortfeasors including injured parties who have provided releases to joint tortfeasors. It does not provide for reducing the recovery against litigating tortfeasors by virtue of considerations attributable to tortfeasors who do not fall within the definition of joint tortfeasors in 10 Del. C. § 6302. Therefore, plaintiffs' exposure to asbestos-containing products of manufacturers or suppliers which are not liable for their tortious conduct is not relevant to the issue of apportionment and will not be admitted for that purpose.

Defendants contend that the immunity provided by the Workmen's Compensation Law is merely an affirmative defense which can only be activated as an affirmative defense to be raised by the employer.

HN6 The Delaware Workmen's Compensation Law created a new system for compensating injuries which occur in the **[*6]** workplace. Hill v. Moskin Stores, Inc., Del. Supr., 165 A.2d 447 (1960); Kofron v. Amoco Chems. Corp., Del. Supr., 441 A.2d 226 (1982); Young v. O. A. Newton & Son Co., Del. Super., 477 A.2d 1071 (1984). It abolished common law rights relating to that subject. Id. Only remedies which are provided by that law can be asserted. Diamond State Tel. Co. v. University of Del., supra; Kofron v. Amoco Chems. Corp., supra. Because the common law remedy which existed in the field has been abolished and preempted by that Law, a claim against an employer based on injury to an employee cannot be entertained by the Court.

HN7 Superior Court Civil Rule 8(c) mandates assertion of an affirmative defense to assert "affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense." The Workmen's Compensation Law is not within the specific portion of Rule 8(c). **[*7]** 5 Wright & Miller, § 1271 considered the scope of the generalization which follows the specific portion. From a review of that discussion, it appears that the generalization has been applied where significant defensive information which is not readily known or foreseeable is to be relied on. One case dealing with workmen's compensation immunity, Seal v. Industrial Elec., Inc., 5th Cir., 362 F.2d 788 (1966), is cited in Wright & Miller. That case does not assist defendants because there was an uncertainty whether or not the facts of that case would remove plaintiff's claim from workmen's compensation immunity. In this case, the legal existence of the employer's immunity from third party claims has been settled for twenty years and the applicability of that principle to this situation was clearly foreseeable. This immunity has been applied to claims for exposure to asbestos-containing products. The employment of plaintiffs has been explored during pretrial discovery. Therefore, the assertion at this time of the legal consequence of that employment cannot come as prejudicial surprise to defendants. I do not find that this is a subject which was required to be raised as an **[*8]** assertion of affirmative defense by any party.

HN8 Apportionment is a form of relief which must be asserted by individual defendants against individual third party defendant joint tortfeasors or against plaintiffs who have released joint tortfeasors. The burden is upon each defendant to prove its right to that apportionment.

Defendants also seek to have evidence admitted showing plaintiffs' exposure to the asbestos-containing products of a manufacturer or supplier is one evidentiary requisite to the proof of proximate cause supporting a claim. In order that the jury can properly determine issues of proximate cause, I conclude that evidence of all exposures which plaintiffs have had to asbestos is relevant to the subject of proximate cause of their injury, subject to appropriate instructions defining the limited use the jury is to make of that evidence. Proposed instructions shall be submitted to the Court and shall have been approved by the Court before that evidence is presented before the jury. Another consideration is involved in the discussion of the limited use of evidence relating to a plaintiff's exposure to asbestos-containing products involving his employer. Some plaintiffs have **[*9]** been exposed to that manufacturer's or supplier's asbestos-containing products both while they were employed by that manufacturer or supplier and also while they were not employed by that manufacturer or supplier. Obviously, HN9 exposure when not employed by that manufacturer or supplier is not immune by virtue of the workmen's compensation law, and liability for that portion of a plaintiff's exposure is tested by the same standards which apply to non-employer manufacturers and suppliers. This subject should also be covered by the instruction to the jury.

The remaining issue relates to suppliers of asbestos-containing products which have been relieved of tort liability by virtue of bankruptcy. HN10 Bankruptcy generally bars litigation other than that heard by that court and it provides its own standards of relief for claimants. Therefore, based upon the reasoning discussed above, I conclude that manufacturers and suppliers of asbestos-containing products which are in bankruptcy or have been discharged in bankruptcy are also outside the purview of Chapter 63 and the apportionment provisions of that Chapter do not

apply to such manufacturers and suppliers. However, this ruling does not apply [*10] with respect to the bankruptcy order established a fund and permitted tort claims involving alleged torts of Johns Manville to be processed and litigated. This general holding does not bar application of 10 Del. C. Ch. 63 and apportionment with respect to exposure to asbestos-containing products manufactured and supplied by Johns Manville because an Order of the Bankruptcy Court established financial protection for injuries resulting from exposure to Johns Manville asbestos-containing products provided procedures for establishing eligibility to recover such compensatory damages including suits such as this. This, in my judgment, satisfies the liability requirement to invoke 10 Del. C. Ch. 63 with respect to claims based on Johns Manville product exposure.

If instruction is submitted by defendants describing the limited purpose for which the evidence described above is to be considered, defendants will be permitted to present that evidence. Otherwise it will not be permitted.

IT IS SO ORDERED.

Service: **Get by LEXSEE®**
Citation: **1990 del super lexis 206**
View: **Full**
Date/Time: Thursday, March 20, 2008 - 2:49 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 **LexisNexis®**  About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT H

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT KEMPSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No.: 06-252 |
| v. | ) |
| | ) |
| TOLL BROS., INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| TOLL BROS., INC., | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DELAWARE HEATING AND AIR | ) |
| CONDITIONING SERVICES, INC. and | ) |
| JD FRAMING CONTRACTORS, INC., | ) |
| | ) |
| Third-Party | ) |
| Defendants. | ) |

### DEFENDANT/THIRD-PARTY PLAINTIFF, TOLL BROS., INC.'S, RESPONSE TO DELAWARE HEATING AND AIR CONDITIONING SERVICES, INC.'S REQUEST FOR ADMISSIONS

1.      Penn National Insurance has afforded coverage to Toll Bros., Inc. and provided its defense for this litigation under Delaware Heating and Air Conditioning Services, Inc.'s commercial general liability policy issued by Penn National Insurance pursuant to Policy Number AC90613137 to Toll Bros., Inc. with liability limits of $1,000,000.

**RESPONSE: Denied.**

2.      If the answer to Request for Admission Number 1 is anything but an unqualified admission, state all facts upon which the denial or partial denial is based. If denial is based upon

ME1 6234975v.1

the application of an exception to the limited tort status, state the factual and legal basis for the exception alleged.

**RESPONSE: In a June 20, 2006 letter, Penn National Insurance accepted Toll Bros., Inc.'s tender of defense and request for indemnification for expenses incurred in defending the above-captioned matter. However, Penn National Insurance's acceptance was subject to a reservation of rights as well as additional conditions set forth, in greater detail, in the June 2006 letter. By contract, Delaware Heating and Air Conditioning, Inc. (DHAC) possessed an unconditional obligation to defend, indemnify and hold harmless Toll Bros., Inc. for damages arising out of DHAC's completion of its assignment at the site of Plaintiff's alleged injury. Further, while DHAC's commercial general liability policy may have a limit of $1,000,000, DHAC's contractual duties to defend, indemnify and hold harmless Toll Bros., Inc. are not restricted to the limits of the Penn National Insurance policy. By way of further response, Toll Bros, Inc. reserves the right to pursue additional coverage for expenses incurred and/or damages awarded from DHAC's other insurance carriers and/or policies, if necessary.**

McCARTER & ENGLISH LLP


By: _A. S. Dupre (4621)_
Michael P. Kelly (DE# 2295)
Andrew S. Dupre (DE # 4621)
919 North Market Street, Suite 1800
Wilmington, Delaware 19801
(302) 984-6300

Attorneys for Defendant/Third-Party
Plaintiff, Toll Bros., Inc.

Dated: April 5, 2007

2

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT KEMPSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | )     C.A. No.: 06-252 *** |
| v. | ) |
| | ) |
| TOLL BROS., INC., | ) |
| | ) |
| Defendant. | ) |
| ———————————————— | ) |
| | ) |
| TOLL BROS., INC., | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DELAWARE HEATING AND AIR | ) |
| CONDITIONING SERVICES, INC. and | ) |
| JD FRAMING CONTRACTORS, INC., | ) |
| | ) |
| Third-Party | ) |
| Defendants. | ) |

## NOTICE OF SERVICE

     I, Andrew S. Dupre, hereby certify that a true and correct copy of Defendant/Third-Party Plaintiff, Toll Bros., Inc.'s, Response to Delaware Heating and Air Conditioning Services, Inc.'s Requests for Admissions were served by first class mail on this 5th day of April, 2007, upon the following counsel of record:

> Joseph J. Rhoades, Esquire
> Allen Dale Bowers, Esquire
> Law Office of Joseph J. Rhoades
> 1225 King Street, St. 1200
> P. O. Box 874
> Wilmington, DE 19899

Louis J. Rizzo, Jr., Esquire
Reger Rizzo Kavulich & Darnall LLP
1001 Jefferson Plaza, St. 202
Wilmington, DE 19801

Erica N. Finnegan, Esquire
Cross & Simon, LLC
913 N. Market St., 11th Floor
Wilmington, DE 19899

McCARTER & ENGLISH LLP

/s/ Andrew S. Dupre

By:_____

  Michael P. Kelly (DE# 2295)
  Andrew S. Dupre (DE # 4621)
  919 North Market Street, Suite 1800
  Wilmington, Delaware 19801
  (302) 984-6300

  Attorneys for Defendant/Third-Party
  Plaintiff, Toll Bros., Inc.

2