# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT KEMPSKI, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 06-252 KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| TOLL BROS., INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| TOLL BROS., INC. | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE HEATING AND AIR | ) | |
| CONDITIONING SERVICES, INC., and | ) | |
| JD FRAMING CONTRACTORS, INC. | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**DELAWARE HEATING AND AIR CONDITIONING'S REPLY TO
TOLL BROS., INC.'S ANSWERING BRIEF TO DELAWARE HEATING AND
AIR CONDITIONING'S MOTION FOR SUMMARY JUDGMENT**

REGER RIZZO & DARNALL LLP

/s/ Louis J. Rizzo, Jr.
Louis J. Rizzo, Jr., Esquire ID # 3374
1001 Jefferson St., Suite 202
Wilmington, DE 19801

DATED:

## <u>TABLE OF CONTENTS</u>

FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 1

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 3

    I.   Toll Bros. Is Not Entitled to Indemnification Under Delaware Law. . . . . . . . . . . . . p. 3

       A.  Delaware Substantive Law Should Apply. . . . . . . . . . . . . . . . . . . . . . . . . . . p. 3

       B.  The Indemnification Clause in Subcontract is
           Void and Unenforceable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 4

   II.  Toll Bros has Received Indemnification and a Defense From DHAC
       Through the Insurance Policy that was Purchased by Penn National. . . . . . . . . . . . p. 8

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 11

i

## <u>TABLE OF CITATIONS</u>

<u>Cases</u>                                                                 <u>Page</u>

*Chrysler Corporation v. Merrell & Garaguso*,
        796 A.2d 648 (Del. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Handler v. State Drywall*, 2007 WL 3112466. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*J.S. Alberici Construction Company, Inc. v. Mid-West Conveyor*
        *Company, Inc., et al.,* 750 A.2d 518, (Del. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Vliw Tech., LLC v. Hewlett Packart Co.* 840 A.2d 606,
        612 (Del. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Midland Red Oak Realty v. Friedman, Billings & Ramsey &Co.,*
        *et al.*, 2005 Del. Super. LEXIS 57, *9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6


<u>Statutes</u>

*6 Del. C. §2704(a)*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBERT KEMPSKI, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 06-252 MPT |
| | ) | |
| v. | ) | |
| | ) | |
| TOLL BROS., INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| TOLL BROS., INC. | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE HEATING AND AIR | ) | |
| CONDITIONING SERVICES, INC., and | ) | |
| JD FRAMING CONTRACTORS, INC. | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**DELAWARE HEATING AND AIR CONDITIONING'S REPLY TO**
**TOLL BROS., INC.'S ANSWERING BRIEF TO DELAWARE HEATING AND**
**AIR CONDITIONING'S MOTION FOR SUMMARY JUDGMENT**

**FACTS**

In Toll Bros., Inc.'s Reply to Delaware Heating and Air Conditioning's (hereinafter "DHAC") Motion for Summary Judgment, Toll Bros. states that Penn National Insurance Company attempted to have DHAC's attorneys also represent Toll Bros. This is not accurate. At the time Penn National requested the file be transferred to Reger Rizzo & Darnall LLP, Reger Rizzo & Darnall LLP did not represent DHAC in this litigation. As early as October of 2006, Penn National informed Toll Bros. counsel, McCarter and English, that Penn National would

1

tender a defense and indemnification under the insurance policy purchased by DHAC to Toll

Bros. in this litigation.  In correspondence between Toll Bros. and Penn National, Toll Bros.

attorneys were informed that the case would be handled by McCarter and English, Toll Bros.

attorney of choice.  Only thereafter, as a result of Toll Bros. refusal to dismiss the third party

claim against DHAC, was Reger Rizzo and Darnall retained to represent DHAC.

Regarding the breach of contract and declaratory judgment action brought in this action,

Penn National Insurance Company on behalf of DHAC has tendered a defense and

indemnification to Toll Bros.  Pursuant to Toll Bros. request, McCarter and English continues to

handle this litigation on behalf of Toll Bros., with expenses paid by Penn National, DHAC's

insurer.  Toll Bros.'Complaint and Answer to DHAC's Motion for Summary Judgment, fails to

identify a valid breach of the DHAC and Toll Bros. subcontract agreement.

## LEGAL ARGUMENT

I.   **Toll Bros. Is Not Entitled To Indemnification Under Delaware law.**

   A.   Delaware substantive law should apply.

In *J.S. Alberici Construction Company, Inc. v. Mid-West Conveyor Company, Inc., et al.*, the Delaware Supreme Court held that a choice of law provision in a contract is invalid when the contract requires one party to indemnify another party for the second party's own negligence. *See J.S. Alberici Construction Company, Inc. v. Mid-West Conveyor Company, Inc., et al.,* 750 A.2d 518, (Del. 2000) *See also, 6 Del. C. §2704(a)*.  In *Alberici*, the Superior Court ruled that a subcontractor had a duty to defend and indemnify a general contractor under an indemnification agreement for the general contractor's own negligence based on the application of Kansas law as set forth in the contract.  Specifically, the choice of law provision in the contract between the subcontractor and general contractor stated that Kansas law should govern any dispute between the parties.  On appeal, the Delaware Supreme Court concluded that the Superior Court's decision to interpret the indemnification agreement under Kansas law was in error because "[Kansas'] law permitting contractual indemnification for one's own negligence is clearly repugnant to the legislatively-defined public policy of Delaware." *Id* at 519.  The Court further opined, "[D]elaware courts will generally honor a contractually-designated choice of law provision so long as the jurisdiction selected bears some material relationship to the transaction. Although the law of a foreign jurisdiction cannot be used to interpret a contract provision in a manner repugnant to the public policy of Delaware." *Id.* at 520. (citations omitted).  Thus, the Court ruled that a contractual provision requiring one party to indemnify another party for the second party's own negligence is against public policy, void and unenforceable. *Id.*

3

In the case at bar, Toll Bros. is attempting to enforce an indemnification clause that provides for DHAC to indemnify Toll Bros. for Toll Bros. own negligence. Based on *Alberici,* this indemnity clause is repugnant to Delaware public policy, it is void and unenforceable. Delaware indemnity law codified at 6 Del. C. §2704 is therefore controlling.

      B.    <u>The indemnification clause in the subcontract agreement is void and unenforceable.</u>

As previously stated in DHAC's Memorandum in Support of DHAC's Motion for Summary Judgment, contracts requiring one party to indemnify another party for the second party's own negligence, whether sole or partial, are against the public policy of the State of Delaware, and as such are void and unenforceable. Courts are not free to disregard this declaration of policy. *See J.S. Alberici* 750 A.2d at 521. *See also Chrysler Corporation v. Merrell & Garaguso*, 796 A.2d 648 (Del. 2002).

*Alberici* clearly held, that any provision which attempts to abrogate the duty to indemnify for another parties negligence has been statutorily eliminated. Here, the indemnification clause in the Toll Bros./DHAC contract only has one provision regarding indemnification. As a result of the toxic language requiring indemnification of Toll Bros. for Toll Bros. own negligence in the provision, the entire indemnification clause is void and unenforceable. *See Generally Alberici,* 750 A.2d 518. Toll Bros.'s argument that the indemnification clause survives by operation of the severability clause does not have merit because *Alberici* does not provide for such dissection of indemnification clauses.

Should the Court determine that the pieces of the indemnification provision can be severed, as argued by Toll Bros., no surviving portion of the clause would remain to require

DHAC to indemnify Toll Bros. In Toll Bros.'s Answering Brief, it is conceded that should

Delaware law govern the following language should be struck from the indemnification

provision: "...whether or not such claim, damages, loss of expense is based in whole or in part

upon any negligent act or omission of [Toll]...". *See* Toll Bros.'s Answering Brief at page 13.

This concession of Toll Bros. does not rid the indemnification clause of all the toxic language

that is included.

> The indemnification provision provides the following:

>> The Contractor [DHAC] shall indemnify, defend and hold
>> harmless [Toll Bros.] and all of its agents and employees from and
>> ***against all claims,*** damages, losses and expenses including
>> attorneys' fees in any way arising out of or resulting from the
>> performance, existence or condition of the Work under the
>> Contract Documents, ***whether or not such claim, damage, loss or***
>> ***expense is based in whole or in part upon any negligent act or***
>> ***omission of [Toll Bros.] or [Toll Bros.]'s participation in the***
>> ***Work or upon any statutory duty or obligation.***

See Exhibit "A" of DHAC's Memorandum of Law in Support of its Motion for Summary

Judgment. (Emphasis added). This language clearly states that DHAC must indemnify Toll Bros.

for ***all claims*** made against Toll Bros. The explanatory clause which follows explains that all

claims include those "based in whole or in part upon the negligence of Toll Bros." This

explanatory clause is the only clause that Toll Bros. concedes should be deleted from the

indemnification provision. The concession by Toll Bros. does not account for the preceding

clauses which still require that DHAC indemnify Toll Bros. for ***all claims*** made against Toll

Bros., including claims based in whole or in part upon the negligence of Toll Bros. The

inclusion of the phrase "all claims" clearly encompasses claims based in whole or in part upon

the negligence of Toll Bros.

In Delaware, the principles governing contract interpretation are well settled. When the contract language is clear and unambiguous, the parties intent is ascertained by giving the disputed language its ordinary and usual meaning. A contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings. *See Midland Red Oak Realty v. Friedman, Billings & Ramsey &Co., et al.*, 2005 Del. Super. LEXIS 57, *9; a copy is hereto attached as Exhibit "A". Here the language is not ambiguous. The language of the remaining portion of the indemnification clause clearly states that DHAC is still responsible for indemnifying Toll Bros. for all claims against Toll Bros. including claims based in whole or in part upon the negligence of Toll Bros.

Toll Bros.'s reliance on *Handler v. State Drywall* is misplaced. *Handler v. State Drywall*, 2007 WL 3112466; a copy is hereto attached as Exhibit "B". In *Handler*, the subcontract agreement provided for two distinct indemnification provisions. *Handler*, 2007 WL 3112466, *2-3. It is DHAC's contention that the *Handler* opinion is consistent with *Alberici* in that it rendered one entire indemnification provision unenforceable. However, should the Court determine that the contention of Toll Bros. is correct and that only the toxic language must be deleted from the indemnification provision, Toll Bros. is still not entitled to indemnification under the subcontract agreement with DHAC.

The indemnification provision that was litigated in *Handler* is materially different than the indemnification provision in the Toll Bros./DHAC subcontract agreement. As previously stated, the *Handler* indemnification article had two separate and distinct provisions.

6

Additionally, the provision that Toll Bros. claims was not void is materially different from the

Toll Bros./DHAC subcontract agreement in this case.  The pertinent portion of the

indemnification provision in *Handler* provides:

> Subcontractor at all times shall fully indemnify, protect and hold
> harmless the Company, its agents and employees from and against
> all loss, damage or expense, including attorney's fees, as to all
> claims, damages or liabilities resulting from accident, negligence,
> including the Company's negligence, ***or any other cause whatever
> caused by Subcontractor or its subcontractors or any of them
> during the performance of this Agreement...***

*Handler,* 2007 WL 3112466, *2. (Emphasis added).  Similar to the indemnification provision in

the Toll Bros./DHAC subcontract agreement, the *Handler* indemnification provision contains an

explanatory clause that describes all claims, to include claims of negligence against the general

contractor. The emphasized portion of the *Handler* indemnification provision identifies the

material difference between the two indemnification clauses.  The *Handler* provision includes an

additional, alternative clause that provides for indemnification for claims ***caused by***

***Subcontractor or its subcontractors or any of them during the performance of this Agreement.***

 The use of the term "or" indicates that the following clause provides an alternate means to

indemnification, which narrows the indemnification requirements of the subcontractor.  The Toll

Bros./DHAC subcontract agreement does not provide this alternative means to indemnification

which narrows the indemnification requirements of DHAC.

DHAC is entitled to Summary Judgment because the Indemnification Clause in the

DHAC/Toll Bros. Subcontract Agreement is void and unenforceable.

II.    **Toll Bros. Has Received Indemnification And A Defense From DHAC Through The Insurance Policy That Was Purchased By Penn National.**

Toll Bros. has insisted throughout this litigation that DHAC breached the subcontract agreement it entered into with Toll Bros.  The elements of a breach of contract claim are: the existence of a contract, the breach of an obligation imposed by that contract, and resulting damage to the plaintiff.  *Vliw Tech., LLC v. Hewlett Packard Co.* 840 A.2d 606, 612 (Del. 2003). Toll Bros. cannot establish a cause of action for breach of contract because Toll Bros. has not suffered any damages.  On this, Toll Bros. stance is clear.  Toll Bros. filed a Third-Party Complaint against DHAC because at the time of the filing of the Complaint, Penn National the insurer of DHAC did not tender a defense and indemnification to Toll Bros.  As of October of 2006, Penn National Insurance Company tendered a defense and indemnification to Toll Bros.  In response to DHAC's Motion for Summary Judgment, Toll Bros. has once again failed to provide or identify any damages that Toll Bros. has incurred because of the alleged breach of contract. Toll Bros. Has not identified damages because no damages exist.

Toll Bros. insists on keeping DHAC in this lawsuit, because in its opinion, the Penn National Insurance policy does not "fully cover and indemnify" Toll Bros.  Article 3 of the subcontract between Toll Bros. and DHAC states:

> INDEMNIFICATION: The Contractor [DHAC] shall indemnify, defend and hold harmless [Toll Bros.] and all of its agents and employees from and against all claims, damages, losses and expenses including attorneys' fees in any way arising out of or resulting from the performance, existence or condition of the Work under the Contract Documents, whether or not such claim, damage, loss or expense is based in whole or in part upon any negligent act or omission of [Toll Bros.] or [Toll Bros.]'s participation in the Work or upon any statutory duty or obligation. ***[DHAC] expressly***

8

> *acknowledges that the parties are contractually allocating these*
> *risks to [DHAC] and [DHAC] has procured and shall maintain*
> *for the term of this Agreement the insurance policies more fully*
> *set forth in Article 4 below for the purpose of providing a*
> *financial means to support this indemnification provision.* In
> addition, in any and all claims against [Toll Bros.] or any of its
> agents or employees by any employee of [DHAC] or anyone for
> whose acts [DHAC] may be liable, the indemnification obligation
> under this paragraph shall not be limited in any way by any
> limitations on the amount or type of damages, compensation or
> benefits payable by or for [DHAC] under workers' compensation
> acts, disability benefit acts or other employee benefit acts.
> ...[DHAC], at its own cost and expense, shall indemnify and
> defend [Toll Bros.] against such action, suit or proceeding and take
> such steps as are necessary to prevent the entry of judgment or
> award against [Toll Bros.] and to satisfy such judgment or award if
> entered.

See Exhibit "A" of DHAC's Memorandum in Support of DHAC's Motion for Summary

Judgment.

Article 3 clearly provides DHAC's indemnification responsibilities. DHAC was to

procure and maintain a policy of insurance for the term of this agreement which would provide

the financial means to support the indemnification clause. The indemnification clause does not

state that DHAC was to fully cover and indemnify Toll Bros., nor does the contract mention

means of indemnification outside of the insurance policy that was to be procured by DHAC.

The indemnification clauses clearly indicates that it will not be limited in any way by any

limitations on the amount of damages, compensation or benefits payable by or for DHAC under

workers' compensation acts, disability benefit acts or other employers benefit acts. *Id.* Toll Bros.

had the forethought to clearly include instances where DHAC's indemnity obligations may be

limited and provided that these instances would not limit DHAC's indemnification

responsibilities. Toll Bros. likewise failed to include in these limitations any issues relating to

9

the insurance policy purchased by DHAC.  Toll Bros. failed to include any non-limiting language regarding the insurance policy purchased by DHAC in the indemnification clause as a result, it may not claim a breach of contract under the indemnification clause for reservation from Penn National.  DHAC purchased a policy of insurance from Penn National that was consistent with Article 4 of the subcontract agreement. Once this litigation comes to a final resolution, Toll Bros. has two years to file a complaint for contribution and indemnification against DHAC, if the verdict exceeds the Penn National policy limit.  Once Toll Bros. can identify damages that it incurred because of the breach of contract, Toll Bros. can file its breach of contract claim.  At this moment, the breach of contract claim is not ripe for adjudication.

Moreover, Toll Bros. has dismissed Counts I and III of its Complaint against DHAC. Those two causes of action are for negligence.  All parties correctly withdrew these causes of actions against DHAC as DHAC cannot be held liable for any personal injury claim against one of their employees.  Because no negligence claims exist against DHAC, DHAC is not a necessary party for the Plaintiff's cause of action.  There can be no comparative negligence found against DHAC as the result of the workers' compensation statute.  In fact, the presence of DHAC at trial will prejudice all the remaining defendants.  Toll Bros.' allegations against DHAC will include testimony and evidence of insurance that would be inadmissible without the presence of this claim.

## **CONCLUSION**

DHAC is entitled to Summary Judgment because the indemnification clause in the subcontract agreement is void under Delaware law.  Additionally, Toll Bros. has received a defense and indemnification under the policy of insurance that was purchased by DHAC pursuant to the subcontract agreement.


REGER RIZZO & DARNALL LLP


 /s/ Louis J. Rizzo, Jr.
Louis J. Rizzo, Jr., Esquire, ID 3374
1001 Jefferson Street
Suite 202
Wilmington, DE 19801
(302) 652-3611
Attorney for Third-Party Defendant
Delaware Heating and Air Conditioning

DATED:

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBERT KEMPSKI, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 06-252 KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| TOLL BROS., INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| TOLL BROS., INC. | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE HEATING AND AIR | ) | |
| CONDITIONING SERVICES, INC., and | ) | |
| JD FRAMING CONTRACTORS, INC. | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

Joseph J. Rhoades, Esquire
Allen Dale Bowers, II, Esquire
Law Office of Joseph J. Rhoades
1225 King St., Suite 1200
Wilmington, DE 19899

David White, Esquire
Matthew J. Rifino, Esquire
919 North Market St., Suite 1800
Wilmington, DE 19801

Daniel P. Bennett, Esquire
Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP
1220 N. Market St., Suite 300
Wilmington, DE 19801

12

REGER RIZZO & DARNALL LLP


 /s/ Louis J. Rizzo, Jr.
Louis J. Rizzo, Jr., Esquire, ID 3374
1001 Jefferson Street
Suite 202
Wilmington, DE 19801
(302) 652-3611
Attorney for Third-Party Defendant
Delaware Heating and Air Conditioning

DATED:

13

# EXHIBIT A

LexisNexis® *Total Research System*                     Switch Client | Preferences | Sign Off | ? Help

Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector |    History | 🖘
Service: Get by LEXSEE®
Citation: 2005 del. super. lexis 57

2005 Del. Super. LEXIS 57, *

MIDLAND RED OAK REALTY, INC. AND MRO SOUTHWEST, INC. Plaintiffs, v. FRIEDMAN, BILLINGS & RAMSEY & CO., INC. AND VELASCO GROUP, L.L.C. Defendants.

C.A. No. 04C-05-091 CLS

SUPERIOR COURT OF DELAWARE, NEW CASTLE

2005 Del. Super. LEXIS 57

November 15, 2004, Submitted
February 23, 2005, Decided

**NOTICE:**

 [*1] THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**DISPOSITION:** Motion To Dismiss DENIED IN PART; GRANTED IN PART.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendants, a broker and a consulting group, filed a Del. Super. Ct. R. Civ. P. 12(b)(6) motion to dismiss the claims filed by plaintiffs, a real estate investment firm and a realty corporation, alleging willful conduct or gross negligence, fraud, and negligence.

**OVERVIEW:** The firm entered into a three-year financing contract. The firm was required to pay the principal balance and a $ 5,275,000 exit fee when the agreement expired in 2002. In 2001, the firm began searching for financing to replace the initial contract. The firm chose the broker to finance piece B and another company to finance piece A. If both pieces were refinanced prior to the expiration of the original contract, the exit fee was to be waived. Ultimately, the contract expired without financing for piece B. The trial court found that the fraud and negligence counts had to be dismissed because the firm could not recover in tort for breach of contract. The fraud and negligence claims were based entirely on obligations owed by the broker under the agreement. The broker did not violate any common law duty independent of the financing contract terms. The firm sufficiently pleaded the willful conduct or gross negligence cause of action although the firm's complaint did not use the term willful. Because willful and wanton each referred to a distinct state of mind, they only had to be averred generally pursuant to Del. Super. Ct. R. Civ. P. 9(b).

**OUTCOME:** The motion was granted with regard to the fraud and negligence counts against the broker. The motion was denied with regard to the willful misconduct or gross negligence counts against the broker. The motion was denied with regard to the fraud, negligence, and agency counts against the consulting group.

**CORE TERMS:** financing, willful, gross negligence, wanton, willful misconduct, matter of law, good faith, citation omitted, cause of action, expired, state of mind, fair dealing, averred, contract language, real estate, independent contractor, grossly negligent, indemnification, covenant, finance, particularity, susceptible, well-pled, fatal, principal office, credit facility, reasonable jury, best efforts, indemnity provision, competent jurisdiction

**LEXISNEXIS® HEADNOTES**                                    ⊟**Hide**

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims 🔍
*HN1* Delaware has clear standards for granting a Del. Super. Ct. R. Civ. P. 12(b)(6) motion to dismiss. A court must accept all well-pled allegations as true. The court must then apply a broad sufficiency test: whether a plaintiff may recover under any reasonable conceivable set of circumstances susceptible of proof under the complaint. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims 🔍
Civil Procedure > Dismissals > General Overview 🔍
*HN2* In the context of a Del. Super. Ct. R. Civ. P. 12(b)(6) motion to dismiss, dismissal will not be granted if the complaint gives general notice as to the nature of the claim asserted against a

defendant.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims 🔍
Governments > Legislation > Vagueness 🔍
*HN3*⊕ In the context of a Del. Super. Ct. R. Civ. P. 12(b)(6) motion to dismiss, a complaint will not be dismissed unless it is clearly without merit, which may be either a matter of law or of fact. Vagueness or lack of detail, standing alone, is insufficient to dismiss a claim.  More Like This Headnote

Contracts Law > Contract Interpretation > General Overview 🔍
*HN4*⊕ In Delaware, the principles governing contract interpretation are well settled. Where the contract language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning.  More Like This Headnote

Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem > General Overview 🔍
Contracts Law > Defenses > Ambiguity & Mistake > General Overview 🔍
Contracts Law > Formation > Ambiguity & Mistake > General Overview 🔍
*HN5*⊕ If the parties disagree as to the proper interpretation of a contract, the disagreement does not automatically create an ambiguity. Instead, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.  More Like This Headnote

Contracts Law > Breach > Causes of Action > General Overview 🔍
Torts > Negligence > General Overview 🔍
*HN6*⊕ As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Contracts Law > Breach > Causes of Action > General Overview 🔍
Contracts Law > Defenses > Fraud & Misrepresentation > General Overview 🔍
Torts > Business Torts > Fraud & Misrepresentation > General Overview 🔍
*HN7*⊕ A breach of contract claim cannot be bootstrapped into a fraud claim merely by adding the words "fraudulently induced" or alleging that the contracting parties have never intended to perform.  More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview 🔍
*HN8*⊕ See Del. Super. Ct. R. Civ. P. 9(b).

Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview 🔍
*HN9*⊕ Willful and wanton each refer to a "distinct state of mind." Accordingly, willful and wanton need only be averred generally as required in Del. Super. Ct. R. Civ. P. 9(b).  More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview 🔍
*HN10*⊕ In the context of Del. Super. Ct. R. Civ. P. 9(b), the term aver implies that there must be at least a positive assertion of the state of mind.  More Like This Headnote

Civil Procedure > Trials > Jury Trials > Province of Court & Jury 🔍
Torts > Negligence > General Overview 🔍
*HN11*⊕ Generally, the issue of whether facts and circumstances amount to willful conduct or gross negligence is a fact question for the jury.  More Like This Headnote

Civil Procedure > Trials > Jury Trials > Province of Court & Jury 🔍
Torts > Negligence > General Overview 🔍
*HN12*⊕ It is a matter of law that when the conduct in question falls short of gross negligence, a case is entirely free from doubt, and no reasonable jury could find gross negligence.  More Like This Headnote

Torts > Negligence > General Overview 🔍
*HN13*⊕ Willful conduct has been defined as a "conscious indifference" or "I don't care" attitude which is the prerequisite of wanton behavior. Wanton conduct is a conscious indifference to consequences in circumstances where the probability of harm to another within the circumference of the conduct is reasonably apparent, although harm to such others in not intended.  More Like This Headnote

Contracts Law > Contract Interpretation > Good Faith & Fair Dealing 🔍
Contracts Law > Types of Contracts > Covenants 🔍
*HN14*⊕ The concept that a covenant of good faith and fair dealing is implied in a contractual relationship is well

accepted in Delaware. Good faith has been defined as faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. More Like This Headnote

Business & Corporate Law > Agency Relationships > Agents Distinguished > Independent Contractors, Masters & Servants > Independent Contractors 🔍

Business & Corporate Law > Agency Relationships > Establishment > Consent 🔍

Torts > Vicarious Liability > Independent Contractors > General Overview 🔍

*HN15* Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. On the other hand, if the agent is an independent contractor, and the employer does not retain control over him, the employer is not liable for the independent contractor's negligent actions. More Like This Headnote

**COUNSEL:** Attorneys for Plaintiffs Midland Red Oak Realty, Inc. and MRO Southwest, Inc.: Jonathan L. Parshall, Esquire, Murphy Spadaro & Landon, Wilmington, Delaware, Shawn L. Raymond, Esquire, J. Hoke Peacock III, Esquire, Susman Godfrey LLP, Houston, Texas.

Attorneys for Defendant Friedman, Billings & Ramsey, Co., Inc.: Arthur G. Connolly, III, Esquire, Connolly Bove Lodge & Hutz, LLP, Wilmington, Delaware, Howard W. Gutman, Esquire, William B. Pittard, IV, Esquire, Williams & Connolly LLP, Washington, D.C.

Attorneys for Defendant Velasco Group, L.L.C.: Judith M. Kinney, Esquire, Reed Smith, Wilmington, Delaware, Richard C. Sullivan, Jr., Esquire, Anne M. Devens, Esquire, Falls Church, Virginia.

**JUDGES:** Calvin L. Scott, Jr., Judge.

**OPINION BY:** Calvin L. Scott , Jr.

**OPINION**

**ORDER**

**SCOTT, J.**

I. Facts

In this action, Plaintiffs Midland Oak Realty, Inc. and MRO Southwest, Inc. ("MRO") are suing Defendants Friedman, Billings, Ramsey & Co., Inc. ("FBR") and Velasco Group, L.L.C. ("Velasco") **[*2]** over a real-estate financing contract. MRO is a Delaware corporation with its principal office in Midland, Texas. FBR is a Delaware corporation with its principal office in Arlington, Virginia. Velasco is a limited liability Virginia corporation.

MRO is a real-estate investment firm engaged in buying, developing, and managing undervalued commercial properties in Texas, Oklahoma, and Arizona. In June 1999, MRO entered into a three-year financing contract with Lehman Brothers. The financing was to cover fifteen properties. MRO was required to pay the principal balance and a $ 5.275 million exit fee when the credit facility expired on July 1, 2002.

During the summer of 2001, MRO began to search for financing to replace the Lehman contract. MRO was put in touch with FBR to discuss possible financing options. In the beginning of 2002, MRO also interviewed other financing consultants. Ultimately, MRO chose FBR and Holliday Fenoglio Fowler ▾ ("Holliday") to discuss financing options. MRO informed each of the firms that it needed to re-finance before the Lehman contract expired. FBR and Holliday suggested that the financing be split into an "A" piece and a "B" piece in order to optimize financing.

**[*3]** FBR made its pitch to MRO on January 28, 2002. Jeff McClure, then vice-president of FBR, made several representations to MRO. He first stated that FBR had expertise in real estate financing, specifically, it was their specialty and they knew the market "better than anyone." McClure also represented to MRO that $ 24 million was a reasonable amount for financing of the "B" piece. McClure was confident in "B" piece financing. He suggested that MRO find the cheapest price for the "A" piece.

In February, 2002, MRO assigned the "B" piece to FBR and the "A" piece to Holliday. MRO told Lehman about the re-financing effort. Lehman agreed in front of a Velasco representative to waive the $ 5.275 million fee if MRO re-financed the "A" and "B" pieces before the Lehman contract expired. While FBR had already begun work on financing, its contract with MRO had not been signed. The contract was not signed until May 6, 2002. The terms of engagement specified that FBR would find financing on "a best efforts basis."

Holliday secured financing for the "A" piece with Greenwich Corporate Products. FBR, however, had not found financing as of April, 2002. In mid-April, McClure left FBR to start his own **[*4]** consulting group, Velasco. FBR

assured MRO that McClure departure would not affect the "B" piece financing.

At a May 1, 2002 status conference between MRO, FBR and Holliday, FBR notified the parties that it had enlisted the help of Velasco to obtain financing. MRO was not a party to this contract. McClure attended the meeting on behalf of Velasco and stated that "I have the deal done" in regard to the "B" piece. MRO informed Velasco that a Texas financier, Smith Brownlie, agreed to underwrite the transaction, but would need at least sixty days. McClure responded that the "B" piece was done, and did not need Brownlie's money.

On June 4, 2002, Holliday, Velasco, FBR, and MRO met in Texas. Brownlie was also present. Brownlie asked McClure about the status of the "B" piece. McClure responded that he had not finalized any financing. In addition, he stated that MRO's "B" piece financing was "in good shape." Brownlie became agitated because he had wished to finance the project but was told that the financing was already completed. Velasco and FBR indicated to MRO after the meeting that they had sent several proposals to different sources.

When asked to provide evidence of potential financers, **[*5]** Velasco provided MRO and Holliday with a list of people not regularly in the real estate finance market. This caused MRO and Holliday to be alarmed. A lack of pitch book for the real estate financing also alarmed MRO. When Velasco finally did produce offers they had received for the "B" piece, MRO realized that they were well below the price needed to replace the Lehman contract. FBR assured MRO that "the deal would get done" and "not to worry."

Ultimately, the Lehman contract expired without financing for the "B" piece. Holliday had tried at the last minute to obtain financing, but was unsuccessful. As a result of not obtaining re-financing, MRO became in default to Lehman. Subsequently, MRO and Lehman entered into a forbearance agreement. MRO has liquidated the vast majority of its portfolio holdings.

II. Standard of Review

*HN1*Delaware has clear standards for granting a Rule 12(b)(6) Motion to Dismiss. The Court must accept all well-pled allegations as true. [1] The Court must then apply a broad sufficiency test: "whether a plaintiff may recover under any reasonable conceivable set of circumstances susceptible of proof under the complaint." [2] *HN2*Dismissal will not be granted if the **[*6]** complaint "gives general notice as to the nature of the claim asserted against the defendant." [3] Further, *HN3*a complaint "will not be dismissed unless it is clearly without merit, which may be either a matter of law or of fact." [4] "Vagueness or lack of detail," standing alone, is insufficient to dismiss a claim. [5]

---

**FOOTNOTES**

[1] *Spence v. Funk*, 396 A.2d 967, 968 (Del. Supr. 1978).

[2] *Id.* (Internal citation omitted).

[3] *Diamond State Tel. Co. v. Univ. of Delaware*, 269 A.2d 52, 58 (Del. Supr. 1970).

[4] *Id.*

[5] *Id.*

---

III. Discussion

In determining how to rule on the Motion, this Court must look to the contract between FBR and MRO. FBR contends that the contract language permits recovery only for "willful misconduct or gross negligence." It is their position that the Motion to Dismiss should be granted because MRO has failed to plead either willful misconduct or gross negligence in their First Amended Complaint. MRO counters that the Motion should **[*7]** not be dismissed because the indemnity provision does not apply until this Court issues a final ruling on the merits.

The Indemnity Provision of the FBR/MRO contract states in pertinent part:

> The Company agrees to indemnify and hold harmless FBR and its affiliates . . . and their respective directors, officers, employees, agents and controlling persons . . . The Company will not be liable to any Indemnified Party under the foregoing indemnification and reimbursement provisions . . . to the extent that any loss, claim, damage or liability is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted primarily from FBR's *willful misconduct or gross negligence.* (emphasis added) . . .

> The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to or arising out of this engagement of FBR pursuant to, or the performance by FBR of the services contemplated by, this Agreement except to the extent that any loss, claim, damage or liability is found in a final, non-

appealable judgment by a court of competent **[*8]** jurisdiction to have resulted primarily from FBR's *willful misconduct or gross negligence*. (emphasis added).

A. *Plain Meaning Rule*

*HN4*In Delaware, the principles governing contract interpretation are well settled. [6] "Where the contract language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning." [7] *HN5*If the parties disagree as to the proper interpretation of the contract, the disagreement does not automatically create an ambiguity. [8] Instead, "a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." [9]

---

**FOOTNOTES**

[6] *Northwestern Nat'l Ins. Co., v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. Supr. 1995).

[7] *Id.* (Internal citation omitted).

[8] *Id.*

[9] *Id.* (citing *Rhone-Poulenc Basic Chemicals Co., Inc. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. Supr. 1992)).

---

**[*9]** In the case *sub judice*, the express language of the FBR/MRO agreement reserves Plaintiff's right to deny indemnification to Defendant if a court has rendered a final judgment holding that FBR acted with willful misconduct or gross negligence. By employing the Plain Meaning Rule, this Court agrees with MRO that a determination of indemnification cannot be made with respect to the parties, on at least a few of the claims, until after this case has gone to trial and been decided.

B. *Recovery of Breach of Contract in Tort Law*

FBR asserts that Counts III and IV must be dismissed against them because a plaintiff may not recover in tort for breaches of contract agreements. This Court agrees.

*HN6*"As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." [10] In both *Pinkert v. Olivieri* and *Tristate Courier and Carriage, Inc. v. Berryman*, [11] the Delaware courts held that *HN7*a breach of contract claim could not be "bootstrapped into a fraud claim merely by adding the words 'fraudulently induced' **[*10]** or alleging that the contracting parties never intended to perform." [12]

---

**FOOTNOTES**

[10] *Pinkert v. Olivieri*, 2001 U.S. Dist. LEXIS 8133, 2001 WL 641737 *5 (D. Del. 2001).

[11] 2004 Del. Ch. LEXIS 43, 2004 WL 835886 *11 (Del. Ch. 2004). (Internal citation omitted).

[12] *Pinkert*, 2001 U.S. Dist. LEXIS 8133, 2001 WL 641737 at *5; *Tristate Courier and Carriage, Inc.*, 2004 Del. Ch. LEXIS 43, 2004 WL 835886 at *11.

---

MRO's claims of Fraud and Negligence are based entirely on obligations owed by FBR under the contractual agreement. The alleged material misrepresentations made by FBR are not collateral issues in this case. FBR has not violated any common law duty independent of the financing contract terms. In addition, MRO has not pointed to a representation or obligation other than the existence of the financing agreement upon which it can base a fraud or negligence claim. FBR's Motion to Dismiss is **Granted** as to Counts III and IV.

C. *Willful Conduct and Gross Negligence May be Averred Generally*

Moreover, FBR argues that MRO has failed **[*11]** to sufficiently plead a cause of action because MRO's First Amended Complaint does not use the word "willful." This Court disagrees.

Delaware Superior Court Civil Rule 9(b) describes the causes of actions that are to be pled with particularity. It reads:

**HN8**(b) Fraud, negligence, mistake, condition of mind. In all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake should be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

**HN9**Willful and wanton each refer to a "distinct state of mind." [13] Accordingly, willful and wanton need only be averred generally as required in Rule 9(b).

---

**FOOTNOTES**

[13] *Johnson v. Pritchett*, 2001 WL 1222100 *3 (Del. Super)(citing *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 529-30 (Del. Supr. 1987)).

---

In *Hedrick v. Webb*, [14] the Court held that **HN10**"the term aver [] implies that there must be at least a positive assertion of the state of mind. **[*12]** " [15] There, the plaintiffs failure to mention wanton negligence or willful intent in their Complaint was fatal. [16] The Court held that the plaintiffs had no cause of action under the <u>Tort Claims Act</u> because they failed to mention the state of mind. [17]

---

**FOOTNOTES**

[14] <u>2004 Del. Super. LEXIS 379, 2004 WL 2735517 (Del. Super.).</u>

[15] <u>2004 Del. Super. LEXIS 379, [WL] at *7.</u>

[16] *Id.*

[17] *Id.*

---

While Plaintiffs do not use the word "willful" in their Complaint, this Court does not find the omission to be fatal. As discussed below, Plaintiffs have alleged sufficient facts to withstand a Motion to Dismiss.

*D. Wanton Conduct is a Question for the Jury*

**HN11**Generally, the issue of whether facts and circumstances amount to willful conduct or gross negligence is a fact question for the jury. [18] **HN12**It is a matter of law when the "conduct in question falls short of gross negligence, the case is entirely free from doubt, and no reasonable jury could find gross negligence." [19] **HN13**Willful conduct has been defined as a "conscious indifference" or **[*13]** "I don't care attitude which is the prerequisite of wanton behavior." [20] Wanton conduct is a "conscious indifference to consequences in circumstances where [the] probability of harm to another within the circumference of the conduct is reasonably apparent, although harm to such others in not intended." [21]

---

**FOOTNOTES**

[18] *Eustice v. Rupert*, 460 A.2d 507, 509 (Del. Supr. 1983); *Nicholson v. Mount Airy Lodge, Inc.*, 1997 U.S. Dist. LEXIS 21035, 1997 WL 805185 *4 (E.D.Pa). (Internal citations omitted).

[19] *Id.*(citing *Albright v. Abington Mem'l Hosp.*, 548 Pa. 268, 696 A.2d 1159,1165 (Pa. 1997)).

[20] *Eustice*, 460 A.2d 509. (Internal citations omitted).

[21] *Id.* (citing *Law v. Gallegher*, 39 Del. 189, 9 W.W. Harr. 189, 197 A. 479, 482 (Del. Supr. 1938)).

---

*1. Breach of Contract*

This Court finds that there is evidence from which a reasonable jury could find that FBR was grossly negligent or engaged in willful conduct in breaching the financing contract with MRO. First, the contract **[*14]** language stated that FBR conduct the Offering on a "best efforts basis only after execution of an underwriting agreement." As of May 1, 2002, FBR contended that the "deal was done." The deal, however, was not done and these representations were made merely three months before the expiration of the Lehman credit facility. In addition, the statements that led MRO to believe that the B piece was proceeding to the underwriting stage may not have been boasting. Finally, the issue of whether FBR was grossly negligent when they told Brownlie, who wanted to secure financing for the Lehman project, that he need not finance the project because it was done is best suited for a determination by the fact-

finder.

*2. Breach of Covenant of Good Faith and Fair Dealing*

HN14 "The concept that a covenant of good faith and fair dealing is implied in a contractual relationship is well accepted in Delaware. [22] Good faith has been defined as "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." [23] Although MRO's allegations of the breach of covenant of good faith are vague at best, this Court does not believe that the count is so clearly without merit [*15] that it be dismissed. Accepting all well-pled allegations as true, FBR may have acted in disregard of MRO's expectations that financing be obtained when it told a possible financier that the "deal was done," when in fact, it was not.

---

**FOOTNOTES**

[22] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 101 (Del. Supr. 1992). At common law, fair dealing and good faith was impliedly a part of every kind of contract. *See* Restatement (Second) of Contracts § 204 (1979).

[23] Restatement (Second) of Contracts § 205, cmt. a. (1979).

---

This Court **DENIES** FBR's Motion to Dismiss Counts I and II because it cannot be concluded as a matter of law that FBR's conduct was not willful or grossly negligent.

*E. Velasco's Relationship with FBR*

FBR and Velasco both asserted at the Motion that Velasco was in fact FBR's agent under the FBR/MRO contract. It is FBR's position that MRO must concede that Velasco is an agent of FBR [*16] because some of the causes of action against FBR stem from Velasco's actions. In contrast, MRO contends that previous to the hearing, FBR would not admit that Velasco was its agent. This Court believes that at this stage in the proceedings, there is a basis upon which the Plaintiffs may recover against Velasco. Velasco's Motion to Dismiss Counts III, IV, and V of the First Amended Complaint is **DENIED.**

HN15 "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." [24] On the other hand, if the agent is an independent contractor, and the employer does not retain control over him, the employer is not liable for the independent contractor's negligent actions. [25]

---

**FOOTNOTES**

[24] Restatement (First) of Agency § 1(1) (1933).

[25] Restatement (Second) of Torts § 414 (1977).

---

In the pleadings before the Court, there is insufficient evidence [*17] to determine if Velasco was an agent or an independent contractor for purposes of this Motion.

This Court is cognizant that FBR enlisted the help of Velasco, however, the status of their relationship remains an issue to be determined. This Court, with so little information, cannot conclude as a matter of law what Velasco's status was in the contract. The Motion, therefore, will not be dismissed with regard to the claims against Velasco.

IV. Conclusion

Based on the foregoing reasons, Counts III and IV are DISMISSED against FBR. Counts I and II remain against FBR. Counts III, IV, and V remain against Velasco.

IT IS SO ORDERED.

J. Calvin L. Scott, Jr.

Service: **Get by LEXSEE®**
Citation: **2005 del. super. lexis 57**
View: **Full**
Date/Time: Friday, May 9, 2008 - 10:43 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs

△ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
❶ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Switch Client | Preferences | Sign Off | Help

   About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT B

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2007 WL 3112466 (Del.Super.)
(Cite as: Not Reported in A.2d, 2007 WL 3112466)

H
Handler Corp. v. State Drywall Co., Inc.
Del.Super.,2007.
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware,New Castle County.
HANDLER CORPORATION, a Delaware corpora-
tion, Handler Development, Inc., a Delaware cor-
poration and Penn National Insurance Company,
Plaintiffs,
v.
STATE DRYWALL CO., INC., a Delaware corpor-
ation, and Harleysville Insurance Company, a
Pennsylvania corporation, Defendants.
No. 05C-06-012 MMJ.

Sept. 27, 2007.

Upon Cross Motions for Summary Judgment.

Louis J. Rizzo, Jr., Esquire, Reger Rizzo Kavulich
& Darnall, LLP, Wilmington, Delaware, Attorney
for Plaintiffs.
Stephen P. Casarino, Esquire, Casarino, Christman
& Shalk, Wilmington, Delaware, Attorney for De-
fendants.

*MEMORANDUM OPINION*

MARY M. JOHNSTON, J.

**PROCEDURAL CONTEXT**

*1 Leandro Tlapechco ("Tlapechco") filed a com-
plaint on September 5, 2002 against Handler Devel-
opment Inc. and Handler Corporation ("Handler")
and other defendants.FN1Tlapechco alleged injur-
ies sustained in a fall at a residential construction
project at the Legends of Frog Hollow in
Middletown, Delaware ("Legends") on May 18,
2002. At the time of the fall, Tlapechco was em-
ployed by the painting contractor, Esperanza Paint-

ing ("Esperanza"). The two causes of action against
Handler were for negligently hiring the construc-
tion supervisor, and for negligence in providing
protective railings on the second floor from where
Tlapechco fell. Defendant State Drywall Company,
Inc. ("Drywall") was the drywalling subcontractor
on the project. Drywall subcontracted the drywall
hanging work to Vallejo Drywall ("Vallejo"). Dry-
wall did not perform the drywall installation.

> FN1.*Tlapechco v. Handler,* C.A. No.
> 02C-09-046 MMJ (Del.Super.)

On March 15, 2005, Handler filed a Motion for
Summary Judgment on the grounds that Handler, as
general contractor at Legends, did not maintain act-
ive control over or voluntarily assume safety re-
sponsibilities for Tlapechco's work. Handler's Mo-
tion for Summary Judgment was denied.

During trial, judgment was entered in favor of Dry-
wall. The Court ruled that Tlapechco had no claim
against Drywall for vicarious liability because Dry-
wall and Vallejo were independent contractors. The
only remaining claim against Drywall was Hand-
ler's contractual claim, which is the subject matter
of this litigation. All contractual claims of Handler
against Drywall were bifurcated from the
Tlapechco trial by agreement of the parties and by
order of the Court, to be decided as part of the in-
stant Declaratory Judgment action.

The personal injury case proceeded to trial on Au-
gust 22, 2005. Handler moved for directed verdict
at the close of plaintiff's case, and again at the end
of trial. The Court denied both motions. The jury
found that Tlapechco was 40% negligent and that
Handler was 60% negligent, and awarded
Tlapechco $3,450,000. The total award of
$5,750,000 was reduced by 40% comparative negli-
gence. The jury found in favor of Handler on the
direct claim of negligent hiring.

Handler appealed to the Delaware Supreme Court,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                              Page 2
Not Reported in A.2d, 2007 WL 3112466 (Del.Super.)
(Cite as: Not Reported in A.2d, 2007 WL 3112466)

seeking review of the Court's rulings on summary judgment and several motions in limine. Tlapechco filed a cross appeal on the Court's award of summary judgment on the issue of general contractor liability. The Delaware Supreme Court reversed the Superior Court's decision on summary judgment and the case was remanded for a new trial. Tlapechco and Handler were able to settle the lawsuit prior to the second trial.

Based on indemnity and insurance agreements with subcontractors, Handler filed a Complaint for Declaratory Judgment against Esperanza and Drywall on June 1, 2005. Esperanza has conceded that Handler was an additional insured under their insurance policies. Handler dismissed the claim against Esperanza after Esperanza tendered its full policy limits to Handler.

*2 Plaintiffs have filed an Amended Complaint for Declaratory Judgment asking the Court to declare that they are entitled to insurance coverage under the policy of insurance written by Harleysville Mutual Insurance Company for Drywall. Plaintiffs seek a declaration that Handler Corporation is an additional insured under the Harleysville policy, and that Harleysville was primary and they are entitled to reimbursement of defense costs. This is defendants' motion for summary judgment claiming entitlement to judgment as a matter of law.

### SUMMARY JUDGMENT STANDARD

This Court will grant summary judgment only when no material issues of fact exist. The moving party bears the burden of establishing the non-existence of material issues of fact.[FN2]Once the moving party meets its burden, the burden shifts to the non-moving party to establish the existence of material issues of fact.[FN3]Where the moving party produces an affidavit or other evidence sufficient under Superior Court Civil Rule 56 in support of its motion and the burden shifts, then the non-moving party may not rest on its own pleadings, but must provide evidence showing a genuine issue of material fact

for trial.[FN4]If, after discovery, the non-moving party cannot make a sufficient showing of the existence of an essential element of the case, summary judgment must be granted.[FN5]A court deciding a summary judgment motion must identify disputed factual issues whose resolution is necessary to decide the case, but the court must not decide those issues.[FN6]The Court must evaluate the facts in the light most favorable to the non-moving party.[FN7] Summary judgment will not be granted under circumstances where the record reasonably indicates that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.[FN8]

> FN2.*Moore v. Sizemore,* 405 A.2d 679, 680 (Del.1979).

> FN3.*Id.* at 681.

> FN4.Super. Ct. Civ. R. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

> FN5.*Celotex Corp.,* 477 U.S. at 322-23;*Burkhart v. Davies,* 602 A.2d 56, 59 (Del.1991), *cert. denied,*504 U.S. 912 (1992).

> FN6.*Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 99 (Del.1992).

> FN7.*Id.*

> FN8.*Ebersole v. Lowengrub,* 180 A.2d 467, 468-69 (Del.1962).

### DISCUSSION

The cross motions for summary judgment present two basic issues. First, does defendant Harleysville Insurance Company ("Harleysville") have a duty to provide a defense to plaintiff Handler Development, Inc. ("Handler") in connection with *Tlapechco v. Handler,* C.A. No. 02C-09-046 (Del.Super.)? Second, is Handler entitled to indem-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2007 WL 3112466 (Del.Super.)
(Cite as: Not Reported in A.2d, 2007 WL 3112466)

nification under the insurance policy issued by defendant Harleysville Insurance Company to defendant Drywall Company, Inc. ("Drywall")?

### Contractual Indemnification

The Subcontract Agreement between Handler and Drywall provides:

1. Subcontractor shall be considered an independent contractor and not an employee or agent of the Company. Subcontractor shall be solely liable for any loss or damage caused by Subcontractor, its subcontractors, or the agents or employees of either.

2. Subcontractor at all times shall fully indemnify, protect and hold harmless the Company, its agents and employees from and against all loss, damage or expense, including attorney's fees, as to all claims, damages or liabilities resulting from accident, negligence, including the Company's negligence, or any other cause whatever caused by Subcontractor or its subcontractors or any of them during the performance of this Agreement, and any contract for extra supplementary work. In any and all claims against the Company or any of its agents or employees by any employee of the Subcontractor or any of its subcontractors, the indemnification obligation under this Paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts. The Company shall not in any manner be liable or responsible for any loss or damage to the Subcontract Work or any part thereof, or to any of the materials or other things supplied by Subcontractor or any of its subcontractor by reason of any casualty or by reason of any act, default or omission of the Company or any third party, except to the extent of the Company's recovery therefore under the Company's Builders' Risk Insurance Policy.

*3 The second paragraph appears to contain a provision requiring indemnification for Handler's own negligence. This exculpatory clause is void.[FN9] A construction contract cannot indemnify a party against that party's own conduct. Therefore, the language in the second paragraph of clause XIX, "including the Company's negligence," and "of the Company," must be invalidated.

> FN9.Del. C. § 2704(a).

However, there is no need to nullify the remainder of the Indemnification section.[FN10]The Agreement contains a severability clause: "If any provision of this Agreement is, or shall at any time be, contrary to law, then such provision shall not be applicable. In such event, all other provisions of this Agreement shall continue in effect."[FN11]

> FN10.Chrysler v. Merrell, 796 A.2d 648, [ ] (Del.2002). 6

> FN11. Subcontract Agreement XXIV. Miscellaneous.

The Subcontract Agreement explicitly provides that Drywall is required to indemnify Handler for vicarious liability. Drywall has no duty to provide indemnification for Handler's own negligence.

### Primary or Excess Coverage

The Penn National Insurance Company insurance policy ("Penn Policy") provides that the coverage is primary, with certain exceptions. The relevant exception provides that the insurance is excess over "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement."

The Additional Insured Endorsement in the Harleysville Policy states: "Any coverage provided hereunder shall be excess over other valid and collectible insurance available to the additional insured

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2007 WL 3112466 (Del.Super.)
(Cite as: Not Reported in A.2d, 2007 WL 3112466)

whether that other insurance is primary, excess, contingent or provided on any other basis."

Arguably, these provisions are competing excess coverage clauses. The initial determination is whether Handler was added as an "additional insured," under the terms of the Penn Policy.

The Subcontract Agreement requires Drywall to purchase comprehensive general liability insurance coverage.[FN12]In construing an insurance policy, the Court must consider the parties' intentions.FN13The Agreement states that the insurance obtained by Drywall "fully covers and indemnifies" Handler. The indemnification clause contemplates that Drywall "shall be solely liable for any loss or damage caused by [Drywall], its subcontractors, or the agents of employees or either."The Court finds that the parties intended that Drywall purchase insurance to cover and indemnify Handler.

> FN12. Subcontract Agreement XI. Insurance.
>
> FN13.*Continental Casualty Co. v. Alexis I Dupont School District,* 317 A.2d 101, 105 (Del.1974).

The Additional Insured Endorsement attached to the Harleysville Policy does not specifically name Handler as an additional insured. The Endorsement defines an "additional insured" as "any general contractor, subcontractor or owner whom [Drywall is] required to add as an additional insured on this policy under a written or oral construction contract or agreement where a certificate of insurance showing that person or organization as an additional insured has been issued and received by 'us' prior to the date of loss."

*4 The Court finds that the Subcontract Agreement is a written construction contract requiring Drywall to add Handler, the general contractor, as an additional insured. Drywall was contractually obligated to take whatever steps were necessary to insure

Handler under the Harleysville Policy.[FN14]Because the Subcontract Agreement requires Drywall obtain insurance covering Handler; Drywall purchased the Harleysville policy; and the Additional Insured Endorsement specifically contemplates that the general contractor will be covered; Handler is an additional insured as intended by the parties and contemplated under the Additional Insured Endorsement attached to the Harleysville Policy.

> FN14.*See Daimler Chrysler Corp. v. Penn National Ins. Co.,* 2003 Del. Super LEXIS 128, *11.

The Penn Policy provides that its insurance is primary except when there is "[a]ny other *primary* insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement."(Emphasis added). The next question is whether the Harleysville Policy is primary or excess. If the Harleysville Policy is primary, the Penn Policy is excess. If Harleysville is an excess policy, the Penn Policy is primary coverage.

The Harleysville Policy Additional Insured Endorsement explicitly provides: "Any coverage provided hereunder shall be excess over other valid and collectible insurance available to the additional insured whether that other insurance is primary, excess, contingent or provided on any other basis."This language is unambiguous. Regardless of Drywall's contractual obligation to indemnify Handler, the Harleysville Policy simply does not provide primary coverage for additional insureds.FN15

> FN15. It appears that Drywall breached its contractual insurance and indemnification obligations to Handler in two ways. First, Drywall agreed to be "solely liable for any loss or damage" it caused. Because the Harleysville Policy is excess insurance for additional insureds, the Harleysville Policy

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2007 WL 3112466 (Del.Super.)
(Cite as: Not Reported in A.2d, 2007 WL 3112466)

does not provide full insurance coverage for Handler's vicarious liability. Second, Drywall failed to issue and transmit to Harleysville a certificate of insurance showing that Handler was an additional insured. However, in light of the finding that the Harleysville Policy is excess coverage, the Court need not resolve whether the procedural defect of Drywall's failure to send a certificate of insurance invalidates Handler's status as an additional insured.

Therefore, there are no circumstances in which the Harleysville Policy can be deemed primary. The Court finds that the Harleysville Policy is excess and the Penn Policy is primary, in the absence of any other primary insurance.

### Duty to Defend

The Harleysville Policy states that "[w]hen this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or 'suit' that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers."As the excess carrier, Harleysville had no duty to defend.

In light of this ruling, the Court need not determine when the duty to defend arose, or when the duty terminated.

### CONCLUSION

Drywall is contractually required to indemnify Handler for vicarious liability. Drywall has no duty to provide indemnification for Handler's own negligence. The Court finds that Handler is an additional insured as intended by the parties and contemplated under the Additional Insured Endorsement attached to the Harleysville Policy. However, the Harleysville Policy does not provide primary coverage for additional insureds. As the excess carrier, Harleysville Insurance Company did not have a duty to

provide a defense or to indemnify Handler.

*5 THEREFORE, Plaintiffs' Motion for Summary Judgment is hereby denied as to entitlement to a defense under the Harleysville policies, and granted as to Drywall's contractual indemnification obligation. Defendants' Motion for Summary Judgment is hereby granted in that Harleysville has no duty to defend Handler, and denied in that Drywall has a contractual obligation to indemnify Handler.

IT IS SO ORDERED.

Del.Super.,2007.
Handler Corp. v. State Drywall Co., Inc.
Not Reported in A.2d, 2007 WL 3112466 (Del.Super.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.