IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT P. KEMPSKI, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 06-252-MPT |
| TOLL BROS., INC., et al., | : |
| Defendants. | : |
| TOLL BROS., INC., | : |
| Third-Party Plaintiff, | : |
| v. | : |
| DELAWARE HEATING AND AIR CONDITIONING SERVICES, INC., a corporation of the State of Delaware, | : |
| Third-Party Defendant. | : |

## MEMORANDUM OPINION

Michael P. Kelly, Esq., David A. White, Esq., Matthew J. Rifino, Esq., McCarter & English, LLP, Renaissance Cneter, 405 N. King Street, 8th Floor, Wilmington, DE 19801
Attorneys for Defendant/Third-Party Plaintiff Toll Bros., Inc.

Louis J. Rizzo, Jr., Esq., Reger Rizzo Kavulich & Darnall LLP, 1001 Jefferson Plaza, Suite 202, Wilmington, DE 19801
Attorney for Third-Party Defendant Delaware Heating and Air Conditioning Services Inc.

Dated: October 21, 2008

Wilmington, DE

Thynge, U. S. Magistrate Judge

## Introduction

This matter arises out of a third-party complaint filed by Toll Brothers, Inc. ("TBI") against Delaware Heating and Air Conditioning Services, Inc. ("DHAC") seeking indemnification under the theories of: (1) negligence; (2) premise liability; (3) breach of contract; and (4) declaratory judgment. Both parties have moved for summary judgment.

## Facts and Procedural Posture

TBI is a home builder. In 2004, TBI began construction of Brandywine Hunt Development ("Brandywine Hunt"), a single home community in Wilmington, Delaware. TBI entered into an agreement ("Agreement") with DHAC for the performance of the HVAC work in the homes at Brandywine Hunt. Article 3 of the Agreement is an Indemnification provision requiring DHAC to indemnify, defend, and hold harmless TBI from and against "all claims damages, losses, and expenses . . . arising out of or resulting from the performance, existence or condition of the Work under the Contract Documents." Article 10 of the Agreement is a Limitation of Liability provision stating that DHAC "shall indemnify and hold Toll harmless from any and all liability in excess of the contract sum." Article 4 of the Agreement is an Insurance provision requiring DHAC to procure and maintain insurance for the terms of the Agreement. Article 14 of the Agreement is a Severability provision which states that if any provision is deemed unenforceable, every other provision in the Agreement "shall remain in full force and effect." To fulfill its insurance obligation, DHAC purchased an insurance policy with

Penn National Insurance Company ("Penn National") that included TBI as an additional insured.

On August 25, 2005, plaintiff, Robert P. Kempski ("Kempski"), an employee of DHAC, was allegedly injured while installing duct work in the attic of a home located at Lot 87 of Brandywine Hunt. Kempski filed a complaint against TBI, seeking compensation for injuries suffered as a result of falling from the attic to the first floor after a floorboard suddenly "gave way." On February 9, 2006, TBI requested that Penn National indemnify and defend TBI against Kempski's claim. TBI and Penn National could not reach an agreement about the indemnification and defense terms, and on May 11, 2006, TBI filed a third-party complaint against DHAC. After further discussion between TBI and Penn National, Penn National offered to defend and indemnify TBI with certain conditions.[1] TBI found the conditions to be unacceptable.

TBI's third-party complaint alleges the following against DHAC: Count I, negligence; Count III, premises liability; Count V, breach of contract for failure to indemnify and defend TBI against Kempski's claims; and, Count VII, declaratory judgment to establish DHAC's duty to indemnify and defend TBI.[2] On January 26, 2007, the parties stipulated that Counts I and III be dismissed.[3] Both DHAC and TBI moved for summary judgment on Counts V and VII. This opinion addresses DHAC's

---

[1] Specifically, Penn National refused to pay for TBI's cost of prosecuting DHAC and refused to indemnify TBI for damages arising solely from TBI's negligence.
[2] Counts II, IV, VI and VIII concern allegations against JD Framing Contractors, another subcontractor with whom TBI contracted for services at Brandywine Hunt.
[3] See D.I. 143 at 1.

motion and TBI's cross-motion in part.[4]

**Standard for Summary Judgment**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[5] Once there has been adequate time for discovery, Rule 56(c) mandates judgment against the party that "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6] When a party fails to make such a showing, "there can be no 'genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[7] The moving party is therefore entitled to judgment as a matter of law because "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[8] A dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]

The moving party bears the initial burden of identifying portions of the record

---

[4] DHAC filed its summary judgment motion in March 2008. After briefing on DHAC's summary judgment motion was completed, TBI cross-motioned for summary judgment on the same issues. Because the court concludes that the duty to indemnify under the Agreement is purely a legal issue, it will address both DHAC and TBI's motions in that regard in this opinion.
[5] Fed. R. Civ. P. 56(c).
[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[7] *Id.* at 323.
[8] *Id.*
[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

4

which demonstrate the absence of a genuine issue of material fact.[10] However, a party may move for summary judgment with or without supporting affidavits.[11] Therefore, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence supporting the nonmoving party's case."[12]

If the moving party has demonstrated an absence of material fact, the nonmoving party must then "come forward with specific facts showing that there is a genuine issue for trial."[13] If the nonmoving party bears the burden of proof at trial, he "must go beyond the pleadings in order to survive a motion for summary judgment."[14] That party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."[15] At the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."[16] Further, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[17] The threshold inquiry therefore is "determining whether there is a need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may

---

[10] *Celotex*, 477 U.S. at 323.
[11] *Id.*
[12] *Id.* at 325.
[13] Fed. R. Civ. P. 56(c).
[14] *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994).
[15] *Anderson*, 477 U.S. at 248.
[16] *Id.* at 249.
[17] *Id.*

reasonably be resolved in favor of either party."[18]

This standard does not change merely because there are cross-motions for summary judgment.[19] Cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[20]

Moreover, "[t]he filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[21]

**Choice of Law**

**Applicable Law**

The initial issue under consideration is whether Pennsylvania or Delaware law governs the interpretation of the Agreement. Under Pennsylvania law, a subcontractor may indemnify a contractor for claims arising out of the contractor's negligence if the indemnification terms are "clearly and explicitly stated in the contract between two parties."[22] Under Delaware law, however, "a contractual provision requiring one party to indemnify another party for the second party's own negligence, whether sole or partial, 'is against public policy and is void and unenforceable.'"[23] Article 15 of the Agreement states, "[t]his Agreement shall be governed by the laws of Pennsylvania."

---

[18] *Id.* at 250.
[19] *Appleman's v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).
[20] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[21] *Krups v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).
[22] *Integrated Projected Servs. v. HMS Interiors, Inc.*, 931 A.2d 724, 735 (Pa. Super. 2007).
[23] *J.S. Alberici Constr. Co., Inc. v. Mid-West Conveyor Co., Inc.*, 750 A.2d 518, 521 (Del. 2000) (quoting 6 *Del. C.* § 2704(a)).

In *J.S. Alberici Construction Co., Inc. v. Mid-West Conveyor Co., Inc.*, the Delaware Supreme Court held that "the law of a foreign jurisdiction cannot be used to interpret a contract provision in a manner repugnant to the public policy of Delaware . . . ."[24] There, a contractor and subcontractor entered into an agreement which contained an indemnification provision requiring the subcontractor to indemnify the contractor for the contractor's negligent acts.[25] Another provision specified that the agreement would be interpreted under Kansas law, which allows a party to contract away liability for its own negligence.[26] The Delaware Supreme Court found that interpreting the indemnification clause under Kansas law would be "clearly repugnant to the public policy of Delaware" because 6 *Del. C.* § 2704(a) expresses an "explicit statement of public policy by the Delaware General Assembly" that contracts requiring a subcontractor to indemnify a contractor for the contractor's negligence are void and unenforceable.[27] Thus, the court held that Delaware law governed the agreement.

### Analysis

TBI contends that Pennsylvania law should govern the interpretation of the Agreement because Article 15 of the Agreement expressly states that Pennsylvania law applies. DHAC argues that Delaware law is appropriate because interpreting the indemnification provision under Pennsylvania law would be repugnant to the public

---

[24] *Id.* at 520.
[25] *Id.* at 519.
[26] *Id.* at 519-20.
[27] *Id.* at 521. Further, the court found that "[t]he purpose of the statute is to prevent owners and their affiliated preconstruction professional people who furnish plans, designs, and specifications from contracting away their duty to stand behind their product." *Id.*

7

policy of Delaware. The conflict here between Pennsylvania and Delaware law resembles the conflict between Kansas and Delaware law in *J.S. Alberici*. Despite that Article 15 explicitly states that Pennsylvania law governs the interpretation of the contract, the court finds that, pursuant to 6 *Del. C.* § 2704(a) and the Delaware Supreme Court's ruling in *J.S. Alberici*, Delaware, not Pennsylvania, law governs the issue of indemnification.

**Duty to Indemnify and Breach of that Duty**

**Applicable Law**

The next concern is whether, under Delaware law, judgment should be entered which determines that DHAC has a duty to indemnify TBI under the Agreement (Count VII), and if that duty exists, whether DHAC has breached it (Count V). Article 3 of the Agreement provides,

> [DHAC] shall indemnify, defend and hold harmless Toll and all of its agents and employees from and against *all* claims, damages, losses and expenses including attorneys' fees in *any way* arising out of or resulting from the performance, existence or condition of the Work under the Contract Documents, *whether or not such claim, damages, loss or expense is based in whole or in part upon any negligent act or omission of Toll or Toll's participation* in the Work or upon any statutory duty or obligation. [DHAC] expressly acknowledges that the parties are contractually allocating these risks to [DHAC] and [DHAC] has procured and shall maintain for the term of this Agreement the insurance policies more fully set forth in Article 4 below for the purpose of providing a financial means to support this indemnification provision. In addition, in any and all claims against Toll or any of its agents or employees by any employee of [DHAC] or anyone for whose acts [DHAC] may be liable, the indemnification obligation under this paragraph shall not be limited in any way by any limitations on the amount or type of damages, compensation or benefits payable by or for [DHAC] under workers' compensation acts, disability benefit acts or other employer benefit acts . . .
>
> Upon receipt of such notice, [DHAC], at its own cost and expense, shall

> indemnify and defend Toll against such action, suit or proceeding and take such steps as are necessary to prevent the entry of judgment or award against Toll and to satisfy such judgment or award if entered. Notwithstanding the foregoing, Toll shall be permitted to be represented by its own counsel should Toll so desire.[28]

In addition, Article 10 states that

> Toll shall not be liable to [DHAC], its agents, servants, workmen or employees for any consequential damages arising from the breach of this Agreement and/or Toll's negligence, and Toll's sole liability shall be for the payment of the contract sum set forth in this Agreement (to be prorated if the work is not yet completed). [DHAC] shall indemnify and hold Toll harmless from *any and all liability* in excess of the contract sum.[29]

As described above, 6 *Del. C.* § 2704(a) mandates that a contractual provision requiring one party to indemnify another party for the second party's negligence is void and unenforceable.[30] A party may still be required to indemnify another party for damages caused by its own negligence. In *Handler Corp. v. State Drywall Co., Inc.*, the Delaware Superior Court found that when an agreement contains a severability clause, § 2704(a) invalidates only the parts of the agreement that indemnify a party against that party's own conduct.[31] There, the indemnification provision between the contractor and subcontractor explicitly stated that the subcontractor was required to indemnify the contractor for the negligence of both the contractor and the subcontractor.[32] The court

---

[28] Emphasis added.
[29] Emphasis added.
[30] *J.S. Alberici Constr. Co., Inc.*, 750 A.2d at 521.
[31] *Handler Corp. v. State Drywall Co., Inc.*, No. 05C-06-012 MMJ, 2007 WL 3112466 at *3 (Del. Super. Ct. Sept. 27, 2007).
[32] *See Id.* at *2-*3. The indemnification clause required that the, "[s]ubcontractor at all times shall fully indemnify, protect, and hold harmless the Company, its agents and employees from and against all loss, damage or expense, including attorney's fees, as to all claims, damages or liabilities resulting from accident, negligence, including the Company's negligence, *or any other cause whatever caused by Subcontractor or its subcontractors or any of them during the performance of this Agreement* and any

9

voided only the language of the provision that required the subcontractor to indemnify the contractor for its negligence.[33] Due to the severability clause, the rest of the indemnification provision could stand, and the subcontractor was required to indemnify the contractor for vicarious liability.[34]

**Analysis**

In the present matter, the Agreement between DHAC and TBI has a severability clause similar to the one in *Handler Corp.*[35] DHAC argues that under § 2704(a), the entire indemnification provision should be voided. TBI contends that, pursuant to *Handler Corp.*, § 2704(a) voids only part of Article 3, and that DHAC still has a duty to indemnify TBI for damages arising out of DHAC's negligence. TBI also alleges that DHAC's failure to train its employees, educate its employees on safe working techniques, and provide its employees with safety equipment contributed to Kempski's fall. It maintains that those failures constitute breaches under the contract, including a breach of the duty to indemnify.

Specifically, TBI argues that only the phrase "whether or not such claim, damage, loss or expense is based in whole or in part upon any negligent act or omission of [Toll]" needs to be removed and if that occurs, DHAC still has a duty to

---

contract for extra supplementary work." *Id.* at *2 (emphasis added). In *Handler Corp.*, the indemnification provision clearly created a duty for the subcontractor to indemnify the contractor for the conduct of both the contractor and the subcontractor.
  [33] *Id.* at *3.
  [34] *Id.*
  [35] Article 14 of the Agreement states, "[t]o the extent that any provision of this Agreement may be declared unenforceable, such provision shall be deemed stricken as though never part of this Agreement; otherwise, every other provision hereof and this Agreement shall remain in full force and effect."

10

indemnify TBI for damages arising out of DHAC's or its agents' actions. Thus, TBI contends that Article 3 should read,

> [DHAC] shall indemnify, defend and hold harmless Toll and all of its agents and employees from and against *all* claims, damages, losses and expenses including attorneys' fees in *any way* arising out of or resulting from the performance, existence or condition of the Work under the Contract Documents.[36]

When written as TBI suggests, the provision still requires DHAC to indemnify TBI for *all* claims, damages, losses and expenses which in *any way* arose from the performance, existence or conditions of the work, which includes causes of action arising out of TBI's negligence. As a result, removing that language directed to TBI's negligence does not alleviate the problem under § 2704(a), and the indemnity obligation still violates the statute and, therefore, is void and unenforceable.

Unlike the indemnification provision in *Handler Corp.*, Article 3 of the Agreement does not contain a clause which expressly states that DHAC is required to indemnify TBI for damages arising out of DHAC's negligence. In *Handler Corp.*, there were two distinct clauses within the indemnification provision describing two separate duties: one clause required the subcontractor to indemnify the contractor for the contractor's negligence; the other clause required the subcontractor to indemnify the contractor for the subcontractor's own negligence, including vicarious liability. When the duty to indemnify the contractor for the contractor's negligence was deleted, the clause requiring the subcontractor to indemnify the contractor for the subcontractor's own negligence and vicarious liability remained enforceable.

---

[36] Emphasis added.

In the present matter, under Article 3, the duties to indemnify for the conduct of TBI and the actions of DHAC are expressed together as a single obligation, and are not severable as in *Handler Corp.* The obligations are not distinct or distinguishable. Article 10, which states that "[DHAC] shall indemnify and hold Toll harmless from *any and all* liability . . . ." faces the same problem.[37] Because there is no distinction between liability related to DHAC's actions and liability related to TBI's conduct, that clause cannot be severed and is also void as against public policy.[38]

The court will not and cannot rewrite the language of Article 3 or Article 10 to make them severable. Although provisions of the Agreement contain an expressed duty for DHAC to indemnify TBI, because of the contract language, that obligation is void and unenforceable under 6 *Del. C.* § 2704(a).[39] Since DHAC has no contractual duty to indemnify TBI, the issue of whether that obligation was breached need not be addressed.

In sum, DHAC's contractual duty to indemnify is void as against the public policy of Delaware. Since there is no obligation to indemnify, there can be no breach of that duty. Therefore, DHAC's motion for summary judgment on the contractual duty to indemnify under Counts V and VII is granted. TBI's cross-motion for summary judgment on that issue is denied.

---

[37] Emphasis added.

[38] The portion of Article 10 which states that "Toll shall not be liable to [DHAC], its agents, servants, workmen or employees for any consequential damages arising from the breach of this Agreement and/or Toll's negligence" does not concern DHAC's duty to indemnify TBI. Rather, it addresses whether TBI has any obligations to DHAC.

[39] Consistent with 6 *Del. C.* § 2704(b), this finding does not address the obligation of an insurer to indemnify TBI as an insured under any policy of insurance for any losses or damages arising in the instant matter.